**Docket No. 24-4852**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

BRITTANY K. MACDONALD,

*Plaintiff-Appellant,*

v.

OREGON HEALTH AND SCIENCE UNIVERSITY, A Public Corporation and Governmental Entity, WAYNE MONFRIES, An Individual, RUTH BEYER, An Individual, MAHTAB BRAR, An Individual, JAMES A. CARLSON, An Individual, DANNY JACOBS, An Individual, SUSAN KING, An Individual, CHAD PAULSON, An Individual, SUE STEWARD, An Individual, STEVE ZIKA, An Individual and DOES, 1-50, inclusive,

*Defendants-Appellees.*

*Appeal from a Decision of the United States District Court for the District of Oregon, No. 3:22-cv-01942-IM · Honorable Karin J. Immergut*

## APPELLANT'S OPENING BRIEF

MATTHEW B. MCREYNOLDS, ESQ.
PACIFIC JUSTICE INSTITUTE
Post Office Box 276600
Sacramento, California 95826
(916) 857-6900 Telephone
mmcreynolds@pji.org

RAY HACKE, ESQ.
PACIFIC JUSTICE INSTITUTE
317 Court Street, NE Suite 202
Salem, Oregon 97301
(503) 917-4409 Telephone
rhacke@pji.org

*Attorneys for Appellant Brittany K. MacDonald*

COUNSEL PRESS INC. · (213) 680-2300 PRINTED ON RECYCLED PAPER

## CORPORATE DISCLOSURE STATEMENT

As a natural person, Plaintiff-Appellant BRITTANY MacDONALD has no parent corporation and no stockholders.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iv

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 2

PERTINENT CONSTITUTIONAL PROVISIONS & STATUTES .......... 3

INTRODUCTION .......... 4

STATEMENT OF THE CASE .......... 8

I. Facts .......... 8

II. Procedural History .......... 14

SUMMARY OF ARGUMENT .......... 15

ARGUMENT .......... 17

I. Standards of Review .......... 19

II. The District Court Erroneously Dismissed MacDonald's § 1983 Claim Because the Contours of MacDonald's Right to Reject a COVID-19 Vaccine for Religious Reasons and Remain Employed Were Sufficiently Clear .......... 21

A. Under No Circumstances May Government Employers Single Out Religious Beliefs for Hostile Treatment .......... 24

1. *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993); *Masterpiece Cakeshop, LLC v. Colo. Civil Rights Comm'n*, 584 U.S. 617 (2018) .......... 27

2. *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707 (1981), *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136 (1987), and *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829 (1989) .......... 28

3. *Sherbert v. Verner*, 374 U.S. 398 (1963) .......... 33

B. Pandemics do not Give Government Employers Free Rein to Discriminate on the Basis of Religion .......... 35

1. *Keene v. City & Cnty. of San Francisco*, 2023 U.S. App. LEXIS 11807 (9th Cir. May 15, 2023) .......... 36

2. *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) .......... 38

3. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) .......... 40

C. The Supreme Court Has Recognized that Opposition to Abortion Can Be, and Frequently is, Religious in Nature .......... 42

III. The District Court Erred in Granting Summary Judgment on MacDonald's Title VII Claim Because MacDonald Raised a Triable Issue of Fact Concerning Discriminatory Motives .......... 48

CONCLUSION .......... 54

CERTIFICATE OF COMPLIANCE .......... 57

STATEMENT OF RELATED CASES .......... 58

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 21

*Arizona v. Mayorkas*,
143 S. Ct. 1312 (2023) .......... 24, 25

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) .......... 22

*Bacon v. Woodward*,
104 F.4th 744 (9th Cir. 2024) .......... 17, 18, 19, 20, 25, 31

*Bannister v. Bd. of Trs.*,
2005 U.S. Dist. LEXIS 59609 (D. Idaho Jan. 18, 2005) .......... 51

*Bolden-Hardge v. Off. of the Cal State Controller*,
63 F.4th 1215 (9th Cir. 2023) .......... 20

*Braunfeld v. Brown*,
366 U.S. 599 (1961) .......... 34

*Burwell v. Hobby Lobby Stores, Inc.*,
572 U.S. 682 (2014) .......... 44, 45, 46

*Chuang v. Univ. of Cal. Davis*,
225 F.3d 1115 (9th Cir. 2000) .......... 20, 21

*Church of the Lukumi Babalu Aye v. City of Hialeah*,
508 U.S. 520 (1993) .......... 24, 25, 27, 41, 41, 54

*Davis v. Team Elec. Co.*,
520 F.3d 1080 (9th Cir. 2008) .......... 20, 51

*Dodge v. Evergreen Sch. Dist. #114*,
56 F.4th 767 (9th Cir. 2022) .......... 16, 21, 22, 23, 32

*Doe v. Bolton*,
410 U.S. 179 (1973) .......... 43

*Does v. Bd. of Regents of Univ. of Colo.*,
100 F.4th 1251 (10th Cir. 2024) .............................................. 25, 50

*Elrod v. Burns*,
427 U.S. 347 (1976) ................................................................... 37

*Emp't Div., Ore. Dep't of Human Res. v. Smith*,
494 U.S. 872 (1990) ................................................................... 38

*Eng v. Cooley*,
552 F.3d 1062 (9th Cir. 2009) ...................................................... 22

*Equal Emp't Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015) ............................................... 48, 50, 51, 52, 54

*Everson v. Bd. of Educ.*,
330 U.S. 1 (1947) ........................................................................ 35

*Groff v. DeJoy*,
600 U.S. 447 (2023) .................................................. 17, 19, 49, 50

*Harris v. McRae*,
448 U.S. 297 (1980) ............................................................... 43, 44

*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
480 U.S. 136 (1987) ................................................................... 28

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905) ..................................................... 18, 19, 39, 40

*Keene v. City & Cnty. of San Francisco*,
2023 U.S. App. LEXIS 11807
(9th Cir. May 15, 2023) ........................17, 18, 25, 26, 31, 36, 37, 49

*Little Sisters of the Poor v. Sts. Peeter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) ............................................................... 44, 46

*Masterpiece Cakeshop, LLC v. Colo. Civil Rights Comm'n*,
584 U.S. 617 (2018) ....................................17, 18, 24, 25, 26, 27, 54

*Nat'l Inst. for Family & Life Advocates v. Becerra*,
138 S. Ct. 2361 (2018) ........................................................ 30, 46, 47

*Peterson v. Hewlett-Packard Co.*,
358 F.3d 599 (9th Cir. 2004) ................................................... 49, 51

*Roe v. Wade*,
410 U.S. 113 (1973), *overruled by*
*Dobbs v. Jackson Women's Health Org.*,
142 S. Ct. 2228 (2022) ................................................................ 43

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
592 U.S. 14 (2020) ................................17, 18, 24, 25, 40, 42, 49, 51

*Sandoval v. Cnty. of Sonoma*,
912 F.3d 509 (9th Cir. 2018) ................................................... 19, 20

*Sch. Dist. of Abington Twp. v. Schempp*,
374 U.S. 203 (1963) ................................................................... 32

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ................................................................... 21

*Sherbert v. Verner*,
374 U.S. 398 (1963) ............................................. 31, 32, 33, 34, 35

*Thomas v. Rev. Bd., Ind. Emp't Sec. Div.*,
450 U.S. 707 (1981) ........................18, 27, 28, 29, 30, 31, 32, 40, 47

*Trans World Airlines v. Hardison*,
432 U.S. 63 (1977) ..................................................................... 49

*Wolf v. Buss (America) Inc.*,
77 F.3d 914 (7th Cir. 1996) ..................................................... 50, 51

## CONSTITUTIONS

United States Constitution First Amendment ............................... *passim*

United States Constitution, Article I, § 8, cl. 7 ..................................... 50

## COURT RULES

Federal Rule of Appellate Procedure 4(a)(1)(A)........................................ 1

Federal Rule of Civil Procedure 12(b)(6) ......................................... 19, 20

Federal Rule of Civil Procedure 56(a)........................................ 16, 20, 54

## STATUTES

28 U.S.C. § 1331 ............................................................................... 1

28 U.S.C. § 2107(a)............................................................................. 1

42 U.S.C. § 1983 ................................. 1, 6, 7, 15, 19, 21, 23, 25, 36, 48, 56

42 U.S.C. § 2000e(j) ............................................................................ 3

42 U.S.C. § 2000e–2............................................................................. 1

42 U.S.C. § 2000e–2(a) ...................................................................... 48

42 U.S.C. § 2000e–2(a)(1)............................................................... 3, 52

Or. Admin. R. 333-019(1) .................................................................. 29

Or. Admin. R. 333-019(3)(a)............................................................... 29

Or. Admin. R. 333-019(5)(a)............................................................... 29

Or. Admin. R. 333-019-1010................................................................. 8

Or. Admin. R. 333-019-1010(1) ............................................................ 8

Or. Admin. R. 333-019-1010(3)(a)................................................ 34, 39

Or. Admin. R. 333-019-1010(4) ................................................. 34, 39, 41

Or. Admin. R. 333-019-1010(5)(a)................................................ 34, 39

Or. Admin. R. 333-019-1010(6) .................................................... 37, 39

**OTHER AUTHORITIES**

Andrew Jacobs, *'Nursing is in Crisis': Staff Shortages Put Patients at Risk*, NYTimes.com (Aug. 21, 2021, updated Oct. 20, 2021) .... 53

Erin Ross, *The Surge of COVID-19 Patients is Stretching Oregon Hospitals' Limits*, OPB.org (August 21, 2021)............................... 53

Title VII of the Civil Rights Act of 1964 ........................................ *passim*

## JURISDICTIONAL STATEMENT

This civil rights action raises federal questions under both the United States Constitution's First Amendment and Title VII of the Civil Rights Act of 1964, giving the district court subject matter jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 42 U.S.C. § 2000e–2.

On August 28, 2023, the district court granted Defendants' motion to dismiss Plaintiff-Appellant BRITTANY MacDONALD's First Amendment claim, brought against the individual defendants named in this proceeding – some of whom were identified as Doe defendants – under 42 U.S.C. § 1983, with prejudice. 1-ER-48-54 (Doc. 35). On July 5, 2024, the district court entered its opinion and order granting summary judgment to the sole remaining Defendant, OREGON HEALTH & SCIENCE UNIVERSITY, on MacDonald's Title VII failure-to-accommodate claim, dismissing MacDonald's lawsuit with prejudice and entering its final judgment disposing of the action the same day. 1-ER-2-30 (Docs. 73 and 74). MacDonald filed her notice of appeal within the 30-day period set by 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4(a)(1)(A). 3-ER-559-63 (Doc. 75). This Court thus has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

A government employer openly declared its intent to deny religious exceptions from Oregon's COVID-19 vaccine mandate for healthcare workers to those who sought them based on COVID-19 vaccines' connection to abortion, declaring such beliefs non-religious. The employer enforced that policy against an employee who sought an exception based on her anti-abortion religious beliefs, then fired the employee for not receiving a COVID-19 vaccine, claiming unvaccinated employees endangered patients' and staff's health and safety.

In light of the foregoing:

**Issue 1:** In the face of a pandemic, can a government employer show hostility toward particular religious beliefs without violating the First Amendment?

**Issue 2:** Can a pretextual, *post hoc* assertion of undue hardship absolve an employer for failing to accommodate an employee's religious beliefs, as Title VII requires?

## PERTINENT CONSTITUTIONAL PROVISIONS & STATUTES

The relevant constitutional provisions and statutes are U.S. Const. amend. I and 42 U.S.C. §§ 2000e(j) and 2000e-2(a)(1) (collectively "Title VII"). The texts of these statutes is set forth in the Addendum.

# INTRODUCTION

Plaintiff-Appellant BRITTANY K. MacDONALD is a registered nurse who worked in the Mother Baby Unit for Defendant-Appellee OREGON HEALTH & SCIENCE UNIVERSITY from 2012 through 2021, when the University terminated her employment due to her religiously based refusal to receive a COVID-19 vaccine. MacDonald is also a practicing Christian who sought a religious exception from the Oregon Health Authority's ("OHA") mandate that healthcare workers employed in Oregon receive COVID-19 vaccines (the "Vaccine Mandate" or the "Mandate") during the COVID-19 pandemic (the "Pandemic"), as both the Vaccine Mandate itself and Title VII allowed. MacDonald sought a religious exception because she held multiple sincere religious beliefs that conflicted with her employment-related duty to receive a COVID-19 vaccine, most notably her religious objection to receiving a vaccine whose manufacturers used cells from aborted babies in the vaccine's development and production.

The University is openly and staunchly pro-abortion: The University actively and unabashedly offers and promotes abortion and related services. After the OHA issued its since-repealed Vaccine Mandate, the University automatically disqualified from consideration

for religious exceptions employees whose religious opposition to abortion gave rise to a conflict with their employment-related duty to receive COVID-19 vaccines whose manufacturers used cells from aborted babies in the vaccines' development and production. Specifically, the University declared as follows:

> "Examples of beliefs that do ***not*** qualify for a religious exception include … ¶ An objection to the vaccine based on fetal cell concerns, either in the vaccines or in testing and development. … ¶ A personal revelation from God about the vaccine, an objection to the vaccine based on bodily integrity or sanctity, and/or a belief that the vaccine is 'unclean.'"

2-ER-126-27 (Doc No. 66) (emphasis in the original). All such beliefs, in the University's view, were "***personal moral choices and/or a conscientious objection rather than a tenet of a religious faith***." *Id.* (emphasis added). MacDonald is just one of many employees to whom the University denied religious exceptions because they raised objections to COVID vaccines based on concerns about fetal cells, uncleanness, and/or revelations from God. 2-ER-171 (Doc No. 65) [noting that the University even denied religious exceptions to employees who worked remotely].[1]

---

[1] *See also*, e.g., *Babiy v. Or. Health & Sci. Univ.*, 3:23-CV-01562-AB (Dkt. Rpt. No. 1); *Chegarnov v. Or. Health & Sci. Univ.*, D. Or. Case No. 3:23-CV-00281-JR (Dkt. Rpt. No. 1); *Jimenez-Mendez et al. v. Or. Health & Sci. Univ.*, D. Or. Case No. 3:23-CV-01190-IM (Dkt. Rpt. No. 1),

When MacDonald commenced this lawsuit in the U.S. District Court for the District of Oregon (the "District Court"), her complaint included two causes of action: She sued the University, her former employer, for religious discrimination based on failure to accommodate her sincerely held religious beliefs. She also sued members of the University's board of directors – Defendants-Appellees WAYNE MONFRIES, RUTH BEYER, MAHTAB BRAR, JAMES A. CARLSON, SUSAN KING, CHAD PAULSON, SUE STEWARD, STEVE ZIKA (collectively the "Board") – and members of the University's Vaccine Exception Review Committee (the "Committee," and collectively with the Board the "OHSU Officials"), who were named as "Does 1-50" in the complaint because MacDonald could not verify their identities before filing suit, under 42 U.S.C. § 1983 against for violating MacDonald's First Amendment-protected freedom of religion.

---

*Khimich v. Or. Health & Sci. Univ.*, Case No. 3:23-CV-01239-YY (Dkt. Rpt. No. 1); *Onofrei v. OHSU*, 3:23-CV-00154-JR (Dkt. Rpt. No. 1); and *Pryce v. Or. Health & Sci. Univ.*, D. Or. Case No. 3:23-CV-01009-AR (Dkt. Rpt. No. 1) (Dkt. Rpt. No. 1) – all of which involve or involved former University employees with abortion-related religious objections to COVID-19 vaccines. *Babiy*, *Chegarnov*, and *Jimenez-Mendez* all involved or involve remote workers.

Defendants moved to dismiss both claims. While MacDonald's Title VII claim survived dismissal, her § 1983 claim did not: The District Court held that the OHSU Officials were entitled to qualified immunity. The District Court later granted summary judgment to the University on MacDonald's Title VII claim.

The Court should note that based on the District Court's erroneous ruling concerning MacDonald's § 1983 claim, multiple judges on the District Court have dismissed such claims against the Committee's members in other cases against the University involving virtually identical or substantially similar facts. *See*, e.g., *Jimenez-Mendez*, D. Ore. Case No. 3:23-CV-01190-IM (Dkt. Rpt. No. 10) and *Khimich*, Case No. 3:23-CV-01239-YY (Dkt. Rpt. Nos. 18 and 25). The District Court's erroneous ruling on the University's motion for summary judgment also has implications for those cases – and other cases involving healthcare employers now pending before the District Court – given the District Court's erroneous declaration in this case that animus toward particular religious beliefs and practices bears no relevance in Title VII failure-to-accommodate cases despite the Supreme Court's declarations to the contrary.

## STATEMENT OF THE CASE

### I. Facts

In August 2021, roughly 18 months after COVID-19's arrival in Oregon, the OHA, pursuant to an executive order from Oregon's then-governor, sought to limit the spread of COVID-19 in Oregon's healthcare facilities via the Vaccine Mandate. 3-ER-521 (Doc No. 1). The Mandate generally required healthcare workers statewide to be vaccinated against COVID-19 by October 18, 2021. *See repealed* Or. Admin. R. 333-019-1010(1).[2] However, the Mandate also let healthcare workers seek, and their employers grant, religious exceptions from the Mandate. *Id.*, subsections (3)-(4). In addition, the Mandate declared that nothing in the Mandate prohibited healthcare employers from complying with Title VII and related state laws prohibiting religious discrimination. *Id.*, subsection (5)(a). The only things the Mandate required of healthcare employers who granted religious objections were that they "take reasonable steps to ensure that unvaccinated healthcare

---

[2] The OHA repealed Or. Admin. R. 333-019-1010 on June 30, 2023. See https://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/9549761 (last viewed on Nov. 20, 2024). To view Or. Admin. R. 333-019-1010 in its entirety, *see* 2-ER-110-16 (Doc. No. 66).

providers and healthcare staff are protected from contracting and spreading COVID-19" and maintain records of any religious exceptions granted. *Id.*, subsections (4) and (6).

In accordance with the Vaccine Mandate, the University required its employees to either be vaccinated against COVID-19 or be granted a religious or medical exemption by October 18, 2021. 3-ER-522 (Doc No. 1). While the University did let employees apply for religious exceptions, the University also openly declared that "***very few of the submitted requests for religious exceptions [would] be approved.***" 2-ER-126 (Doc. No. 66) (emphasis in the original). The University's policymakers – the Board – established the University's policy concerning which religious beliefs would be accommodated and which would not. 3-ER-529-30 (Doc No. 1). The Committee, meanwhile, was tasked with deciding whom to grant or deny religious exceptions in accordance with that policy. 3-ER-530, 549 (Doc No. 1).

MacDonald is a registered nurse who worked in OHSU's Mother Baby Unit for approximately nine years. 2-ER-90-91 (Doc No. 66). MacDonald is also a practicing Christian who opposes abortion on religious grounds: Based on biblical teachings, she believes life begins in

the womb and that, accordingly, abortion is the taking of a human life — i.e., murder, which the Bible explicitly prohibits. 2-ER-129, 2-ER-133-37 (Doc No. 66). MacDonald has manifested her religious opposition to abortion in both her professional and personal lives: Professionally, MacDonald refused to participate in abortions as part of her job-related duties at the University — her conscience would not allow it. 3-ER-522 (Doc No. 1). The University, to its credit, accommodated MacDonald's religious beliefs in that regard. *Id.* Personally, when pregnant with her third daughter, MacDonald endured physical and mental hardships related to the pregnancy, at one point becoming very sick and running out of options for safe medications. 2-ER-135-36 (Doc No. 66). Even so, due to her strong religious convictions concerning the beginning of life in the womb, MacDonald declined medical procedures she felt would harm her unborn baby and put her unborn child's life ahead of her own well-being, ultimately bringing her child into the world successfully. *Id.*

When researching the COVID-19 vaccines available in the United States when the OHA issued the Vaccine Mandate, MacDonald learned that the vaccines' manufacturers used cells from aborted babies in the production of the vaccines. 3-ER-523 (Doc No. 1). The University even

acknowledged this. 2-ER-126-27 (Doc No. 66). Based on prayer and Bible study, MacDonald determined that she was unable, in accordance with Christian principles, to take a COVID-19 vaccine. 2-ER-129-31, 2-ER-133-37 (Doc No. 66). Thus, on or about September 19, 2021, MacDonald submitted a religious exception request to OHSU. *Id.*

The religious beliefs MacDonald holds that render her unable to take a COVID-19 vaccine include the following:

- All children are created by God for a purpose. Thus, MacDonald cannot support, financially or otherwise, organizations that profit from the slaughter of unborn lives — either directly, as the abortion industry does, or indirectly, as the COVID-19 vaccine manufacturers who use cells from aborted babies at any stage in the production of the vaccines do — as doing so would further contribute to the destruction of lives God created;
- MacDonald's body is a temple of the Holy Spirit that belongs not to herself, but to God, and it is therefore a sin — i.e., disobedience to God — to defile her body. Taking a vaccine whose manufacturer used the human remains obtained through

the deliberate killing that occurs via abortion would, in MacDonald's view, defile her body;

- MacDonald received divine guidance – she called it being "moved by the Holy Spirit" – to reject COVID vaccines; and
- Disobedience to God comes with consequences, in this life or beyond. Obedience to God, however, will be rewarded. MacDonald did not wish to one day stand before God's judgment throne and have to explain why she defiled her body despite receiving instruction from God not to do so.

2-ER-133-137; 3-ER-543-47.

In the religious exception request form the University required its employees to fill out, the University asked three questions pertaining to the employees' religious beliefs. 2-ER-129-30 (Doc No. 66); 3-ER-540-41. Trying to explain her beliefs as thoroughly as possible in the hopes that the Committee would grant her request, MacDonald provided detailed responses to each of the University's questions in a document MacDonald attached to the form. 2-ER-133-37. Defendants repeatedly and derisively called the document attached to the form MacDonald's "essay" because it is five pages long. 3-ER-488, 3-ER-509-10 (Doc No.

22). Regardless, in the document, MacDonald points to numerous Bible verses supporting her religious convictions. 2-ER-133-37; 3-ER-543-47.

On October 7, 2021, the Committee denied MacDonald's religious exception request on the University's behalf. 2-ER-139 (Doc No. 66); 3-ER-524, 527, 549 (Doc. No. 1). The Committee rejected MacDonald's request because she held three sincere religious beliefs the Board, in its role as OHSU's policymakers, had deemed unworthy of accommodation: (1) Her objection to the use of cells from aborted babies in the production of COVID-19 vaccines; (2) her belief that the vaccines were "unclean" due to their connection to abortion; and (3) her belief that the Holy Spirit had guided her – or, to use OHSU's words, given her a "personal revelation" – not to receive a COVID-19 vaccine. 2-ER-133-37; 3-ER-543-47. The Committee's rejection letter warned MacDonald that if she was not vaccinated against COVID-19 by October 18, 2021, the University would terminate her employment. 2-ER-139 (Doc No. 66); 3-ER-524, 527, 549 (Doc. No. 1).

Unable to abandon her sincerely held religious beliefs, MacDonald did not get vaccinated by October 18, 2021. 3-ER-446 (Doc. No. 22); 3-

ER-544 (Doc No. 1). OHSU thus fired her on December 2, 2021. 3-ER 544 (Doc No. 1).

The University, the Court should note, is openly and staunchly pro-abortion: The University actively and unabashedly offers and promotes abortions and related services. 2-ER-153 (Doc No. 66) ["Here at OHSU, we are resolute in our commitment to provide the full spectrum of reproductive health care – including abortion – to all who seek it …"]. The University's refusal to even consider accommodating religious employees who oppose receiving COVID-19 vaccines due to the vaccines' connection to abortion raises the dark specter that the University rid itself of employees like MacDonald not out of legitimate concern for the health and safety of the University's patients and employees – any assertion made by the University or the OHSU Officials to the contrary notwithstanding – but to punish employees like MacDonald for expressing religious opposition to abortion.

## II. Procedural History

MacDonald commenced this lawsuit on December 15, 2022. 3-ER-517-63 (Doc No. 1). Her complaint included just two claims – one against the University for failure to accommodate her sincerely held

religious beliefs in violation of Title VII, the other against the OHSU Officials under 42 U.S.C. § 1983 for violating her constitutionally protected freedom of religion. 3-ER-526-30 (Doc No. 1).

In March 2023, the University moved to dismiss both claims – the Title VII claim on grounds of undue hardship, the § 1983 claim on the ground that the OHSU Officials were protected by qualified immunity. 3-ER-477-516 (Doc No. 22). The District Court dismissed the § 1983 claim, but not Plaintiff's Title VII claim. 1-ER-31-55 (Doc No. 55). The Court later granted summary judgment to the University on MacDonald's Title VII claim. 1-ER-3-30 (Doc No. 73).

## SUMMARY OF ARGUMENT

This Court should reverse the District Court's dismissal of MacDonald's case due to the following:

1. **§ 1983 Claim:** The OHSU Officials were directly responsible for denying MacDonald a religious exception from the Vaccine Mandate. More than a century's worth of constitutional law jurisprudence from both the Supreme Court and this Court forms the contours of MacDonald's right to avoid taking an abortion-connected vaccine without losing her employment as a

nurse. That right is sufficiently clear that a reasonable person in the OHSU Officials' position would have known they were violating that right. While no case on point features facts identical to this case, MacDonald does not need one: "[A] general constitutional rule already identified in the decisional law ***may apply with <u>obvious</u> <u>clarity</u>*** to the specific action in question[.]" *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 784 (9th Cir. 2022) (*Dodge*) (emphasis added).

2. **<u>Title VII Claim:</u>** Federal Rule of Civil Procedure 56(a) allows the Court to grant summary judgment only when no disputed issues of material fact exist. Here, MacDonald has raised one colossal triable issue of material fact – namely, whether OHSU acted with discriminatory motives and merely used the safety of patients and staff as a pretext for discrimination. The District Court's ruling to contrary notwithstanding, discriminatory motives matter in Title VII failure-to-accommodate cases, especially given the Supreme Court's declaration that hardship stemming from "***animosity to a particular religion, to religion in general, or to the very***

***notion of accommodating a religious practice <u>cannot</u> be considered 'undue.'*** " *Groff v. DeJoy*, 600 U.S. 447, 472 (2023) (*Groff*) (emphasis added). Because an employee's showing of pretext can overcome an employer's showing of undue hardship, the Court should reverse.

## ARGUMENT

As this Court has wisely recognized in multiple cases concerning COVID-19 vaccine mandates, the Pandemic did not give government employers – in healthcare-related fields or otherwise – free rein to ignore the commands of either the First Amendment's Free Exercise Clause or Title VII and discriminate on the basis of religion. *See*, e.g., *Bacon v. Woodward*, 104 F.4th 744, 751 (9th Cir. 2024) (*Bacon*) [quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (*Diocese of Brooklyn*)] and *Keene v. City & Cnty. of San Francisco*, 2023 U.S. App. LEXIS 11807 at *7 (9th Cir. May 15, 2023) (*Keene*). On the contrary, the Pandemic required heightened vigilance to ensure that even in a nationwide medical crisis, government employers "remember their own high duty to the Constitution and the rights it secures." *Masterpiece Cakeshop, LLC v. Colo. Civil Rights Comm'n*, 584 U.S. 617,

638-39 (*Masterpiece Cakeshop*); *see also Diocese of Brooklyn*, 592 U.S. at 20 [warning that before taking actions that "strike at the very heart of the First Amendment's guarantee of religious liberty," government must "conduct a serious need for such a drastic measure"]. The same goes for Title VII. *Keene*, 2023 U.S. App. LEXIS 11807 at *7. And even if a government employer deems it necessary to impose the "drastic measure" of infringing on religious liberty to protect the health and safety of employees, clientele, and even its community, the First Amendment requires that they do so via the least restrictive means possible. *Bacon*, 104 F.4th at 751 [quoting *Thomas v. Rev. Bd., Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981) (*Thomas*)].

In *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) – once the seminal case on government-declared medical emergencies and their impact on religious liberty – the Supreme Court issued the following warning to lower courts:

> "[I]t might be that an acknowledged power of a [state] to protect itself against an epidemic threatening the safety of all, might be exercised in particular circumstances ***and in reference to particular persons in such an arbitrary, unreasonable manner***, or might go so far beyond what was reasonably required for the safety of the public, as to

> authorize or compel the courts to interfere for the protection of such persons."

*Jacobson*, 197 U.S. at 28 (emphasis added).

In disqualifying from consideration for religious exceptions to the OHA's Vaccine Mandate those employees whose religious objections to abortion prohibited them from receiving COVID-19 vaccines due to manufacturers' use of cells from aborted babies in the vaccines' development, the University and the OHSU Officials, acting on the University's behalf, singled out for discriminatory treatment those who did not have the "right beliefs." 3-ER-452-53 (Doc No. 23); 3-ER-387-88 (Doc. No. 31). This, neither the First Amendment nor Title VII allows. *See Bacon*, 104 F.4th at 751 [re: the First Amendment] and *Groff*, 600 U.S. at 472 [re: Title VII]. The Court should thus reverse the District Court's dismissals of MacDonald's § 1983 and Title VII claims.

## I. Standards of Review

Concerning motions to dismiss filed under Fed. R. Civ. P. 12(b)(6), this Court reviews a judgment dismissing a claim on the pleadings de novo. *Bacon*, 104 F.4th at 749. The same applies in cases where a district court grants a motion for summary judgment filed under Fed. R. Civ. P. 56(a). *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 513 (9th Cir.

2018). In reviewing cases de novo, the Court "accept[s] the complaint's well-pleaded factual allegations as true, ***and construes all inferences in the plaintiff's favor***." *Bolden-Hardge v. Off. of the Cal State Controller*, 63 F.4th 1215, 1220 (9th Cir. 2023) (*Bolden-Hardge*) (cleaned up) (emphasis added) (internal quotation marks omitted).

Concerning Rule 12(b)(6) motions, dismissal is generally only appropriate "if the defendant shows some ***obvious bar*** to securing relief on the face of the complaint[.]" *Bolden-Hardge*, 63 F.4th at 1224-25 (emphasis added) (internal quotation marks omitted). This is especially true given the risk that a defendant may be attempting to evade federal and state religious accommodation laws. *Id.* at 1225-26.

As for motions for summary judgment, this Court has admonished lower courts that summary judgment is strongly disfavored in Title VII religious discrimination cases such as this one. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (*Davis*). "This is because the ultimate question" – i.e., whether an employer unlawfully discriminated against an employee – "***can only be resolved through a searching inquiry*** – one that is most appropriately conducted by a factfinder, ***upon a full record***." *Id.* (emphasis added) [quoting *Chuang v. Univ. of*

*Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000)]. Indeed, "[c]redibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts are" a jury's responsibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II. The District Court Erroneously Dismissed MacDonald's § 1983 Claim Because the Contours of MacDonald's Right to Reject a COVID-19 Vaccine for Religious Reasons and Remain Employed Were Sufficiently Clear.

Under 42 U.S.C. § 1983, state officials who violate federal law can be stripped of their official character and face liability for their conduct. *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974). State officials who violate "clearly established statutory or constitutional rights ***of which a <u>reasonable</u> <u>person</u> would have known***" are not entitled to qualified immunity. *Dodge*, 56 F.4th at 776 (emphasis added).

Whether a reasonable person in the OHSU Officials' position would have known he or she was violating a well-established constitutional right "is subject to a well-known, two-part analysis: (1) whether a protected right was violated, and (2) whether that right was clearly established at the time of the violation." *Dodge*, 56 F.4th at 776. "To be 'clearly established,' existing precedent ***must have placed the statutory or constitutional question <u>beyond</u> <u>debate</u>***." *Id.* at 783

(emphasis added) [internal quotation marks omitted]. The Court "must define the rights implicated here at a level commensurate with the specific factual and legal context of the case." *Id.* at 784.

To that end, "a plaintiff need not produce 'a case that is directly on point.'" *Dodge*, 56 F.4th at 784 [quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)]. "Instead, it is enough to show that '[t]he contours of [a] right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* [quoting *al-Kidd*, 563 U.S. at 741]. "'Officials can still be on notice that their conduct violates established law ***even in novel factual circumstances***' if the 'case involves ***mere application of settled law to a new factual permutation***.'" *Id.* (cleaned up) (emphasis added) [quoting *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009)].

In this case, the Court held that the OHSU Officials "are entitled to qualified immunity, as the right to refuse a state-mandated vaccine by a healthcare worker who works in-person with vulnerable populations due to allegedly religious concerns about 'fetal cells' and 'bodily integrity or sanctity' was not clearly established at the time the Board and [the Committee] denied Plaintiff's religious exemption." 1-

ER-49 (Doc. 35). In so ruling, the District Court all but ignored this Court's instruction in *Dodge* that "a general constitutional rule already identified in the decisional law ***may apply with obvious clarity*** to the specific action in question" – even though MacDonald did point the District Court to *Dodge* in her opposition to Defendants' motion to dismiss. *Dodge*, 56 F.4th at 784; 1-ER-31-55 (Doc No. 35); 3-ER-383-84, 442, and 459. The District Court, in fact, did not even discuss *Dodge* in dismissing MacDonald's § 1983 claim. 1-ER-31-55 (Doc No. 35).

The OHSU Officials argued before the District Court that "[n]o precedent clearly prohibits Defendants from applying a generally applicable framework to efficiently process hundreds of exception requests" while evaluating for various factors. 3-ER-425 (Doc No. 26). Never mind that the foregoing statement at minimum implies, and at maximum is an outright admission, that the OHSU Officials used the Pandemic as an opportunity to purge hundreds of people of faith from the University's payroll: Even if hundreds of people seeking religious exceptions from a state-imposed vaccination requirement – exceptions the state itself allowed – is a novel factual circumstance, more than a century of constitutional law jurisprudence from the Supreme Court

and the Ninth Circuit makes clear that even in times of emergency, government officials may not single out individual religious beliefs for hostile treatment.[3] The Pandemic is merely the latest permutation to which settled law applies.

### A. Under No Circumstances May Government Employers Single Out Religious Beliefs for Hostile Treatment.

"A law targeting religious beliefs as such ***is <u>never</u> permissible***." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993) (*Lukumi*) (emphasis added). "Never" is an absolute: It means that regardless of circumstance, "[t]he government, if it is to respect the Constitution's guarantee of free exercise, ***<u>cannot</u> impose regulations that are hostile to the religious beliefs of <u>affected</u> <u>citizens</u>***[.]" *Masterpiece Cakeshop, LLC v. Colo. Civil Rights Comm'n*, 584 U.S. 617, 638 (2018) (*Masterpiece Cakeshop*) (emphasis added) [quoting *Lukumi*, 508 U.S. at 534]. The foregoing rules apply even in a pandemic, when government officials may be particularly inclined to suspend constitutional rights in the name of protecting public health and safety. *See*, e.g,, *Diocese of Brooklyn*, 592 U.S. at 19, and *Arizona v. Mayorkas*,

[3] The cases discussed below are presented in order of relevant governing principles and their importance, not chronologically.

143 S. Ct. 1312, 1315 (2023) (*Mayorkas*) (Gorsuch, J., concurring), *Bacon*, 104 F.4th at 754, and *Keene*, 2023 U.S. App. LEXIS 11807 at *7.

The District Court rejected MacDonald's reliance on both *Masterpiece Cakeshop* and *Lukumi* in dismissing MacDonald's § 1983 claim. 1-ER-51-52 (Doc. No. 35). However, this Court relied in part on *Lukumi* in its ruling in *Bacon* – which, like this case, involved a government employer that, like the University, was in the life-saving business. *Bacon*, 104 F.4th at 750-51 [quoting *Lukumi*, 508 U.S. at 546]. And in *Does v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1269 (10th Cir. 2024) (*Univ. of Colo.*) – a case involving a defendant that, like the University, is not only a government employer, but a state medical school that fired employees unable to receive COVID-19 vaccines for religious reasons – the Tenth Circuit relied heavily on *Masterpiece Cakeshop*, finding the principles articulated therein very applicable in the employment law context. *See Univ. of Colo.*, 100 F.4th at 1269 [quoting *Masterpiece Cakeshop*, 584 U.S. at 639]. This Court likewise found *Masterpiece Cakeshop* instructive in deciding *Keene* – which, like this case, concerned a government employer's adverse employment

actions toward employees with abortion-based religious objections to COVID-19 vaccines. *Keene*, 2023 U.S. App. LEXIS 11807 at *5 [citing *Masterpiece Cakeshop*, 584 U.S. at 638]. The District Court thus erred in dismissing the applicability of the principles articulated in *Lukumi* and *Masterpiece Cakeshop* – not to mention other cases that do not involve pandemics and large numbers of healthcare workers seeking religious exceptions to state vaccination mandates – to this case.

*Lukumi* and *Masterpiece Cakeshop* are just two of the cases that articulate general constitutional principles that help form the contours of the right at issue here – namely, MacDonald's right to decline receiving a COVID-19 vaccine due to such vaccines' connection with, and her religious objection to, abortion, even in the face of a pandemic, while remaining employed in a healthcare-related field. *See*, e.g., *Keene*, 2023 U.S. App. LEXIS 11807 at *6 [rebuking a lower court for failing to "consider Appellants' argument that they lost the opportunity to pursue their 'chosen profession,' which" the Ninth Circuit "has recognized as irreparable harm in certain circumstances" (cleaned up)].

### 1. *Church of the Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520 (1993); *Masterpiece Cakeshop, LLC v. Colo. Civil Rights Comm'n*, 584 U.S. 617 (2018)

The Supreme Court has made clear on multiple occasions that the First Amendment's Free Exercise Clause "bars 'even subtle departures from neutrality' on matters of religion." *Masterpiece Cakeshop*, 584 U.S. at 638 [quoting *Lukumi*, 508 U.S. at 534].

In this case, the OHSU Officials – the Board in enacting the policy declaring which religious beliefs would not be accommodated, the Committee in enforcing that policy – were by no means neutral: They were overtly hostile to MacDonald's anti-abortion religious beliefs. 2-ER-126-27 (Doc. No. 66); 3-ER-551-52 (Doc. No. 1). The OHSU Officials presupposed the illegitimacy of MacDonald's beliefs, labeling them as "personal moral choices and/or conscientious objections rather than a tenet of a religious faith." *Id.* In doing so, the OHSU Officials exceeded constitutional bounds. *Masterpiece Cakeshop*, 584 U.S. at 638; *see also Thomas*, 450 U.S. at 716 [declaring that it is not government's place to decide whether a religious practitioner correctly perceived his or her faith's commands].

### 2. *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707 (1981), *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136 (1987), and *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829 (1989)

These three unemployment benefits cases are relevant here because they all involve employees whose religious beliefs and practices conflicted with employment-related duties. All three cases also affirm the same principle: "Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where [the state] denies such a benefit because of conduct mandated by a religious belief, ***thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs***, a burden on religion exists." *Thomas*, 450 U.S. 717-18 (emphasis added). The burden on religion, which is substantial, is that the religious adherent "***is forced to choose between fidelity to religious belief and ... employment***." *Frazee*, 489 U.S. at 832 (emphasis added) [quoting *Hobbie*, 480 U.S. at 144].

Defendants placed such a substantial burden on MacDonald here – the University, acting through its Board, by categorically denying religious exceptions to employees who held MacDonald's specific beliefs; the Committee by enforcing that policy via threatening to fire, and ultimately firing, MacDonald. 2-ER-125-26, 139 (Doc No. 66); 3-ER-554

(Doc. No. 1). A reasonable government official in the OHSU Officials' shoes would have known better: Even granting that the OHA declared it "vital … that healthcare providers and healthcare staff be vaccinated against COVID-19," the state's interest was not so vital as to require all healthcare workers statewide, regardless of religious status, to be vaccinated. Or. Admin. R. 333-019(1), (3)(a), (5)(a). The OHA would not have allowed religious exceptions otherwise.

The facts of *Thomas* mirror those in this case in one key respect: Just as Indiana's Supreme Court in *Thomas* used the beliefs of the titular unemployment benefits claimant's fellow Jehovah's Witness to assert that the claimant's sincere beliefs concerning involvement in the production of weapons was "more a personal philosophical choice rather than a religious choice" [*Thomas*, 450 U.S. at 714], the University declared that MacDonald's specific beliefs "are personal moral choices and/or conscientious objections rather than a tenet of a religious faith." 2-ER-126-27 (Doc No. 66); 3-ER-551-52 (Doc. No. 1). This, the Free Exercise Clause prohibits: It is outside the OHSU Officials' ken to declare whether employees correctly perceived their faiths' commands, as government officials "***are <u>not</u> arbiters of scriptural***

***interpretation***." *Thomas*, 450 U.S. at 716 (emphasis added). In so doing, the OHSU Officials, acting on the University's behalf, overstepped their constitutional bounds. 2-ER-94 (Doc. No. 66) ["OHSU stated, via e-mail, that it was the arbitrator of what my religious beliefs could be and set forth its own criteria by which it would judge my religious beliefs"].

Furthermore, *Thomas*, *Hobbie*, and *Frazee* all make clear that "beliefs ***rooted in religion*** are protected by the Free Exercise Clause." *Frazee*, 489 U.S. at 833 (emphasis added) [quoting *Thomas*, 450 U.S. at 713]. The OHSU Officials describe MacDonald's religious beliefs as being "couched in religious-sounding terms." 3-ER-488, 499, 504 (Doc No. 22). Never mind that a belief need not be exclusively religious to be protected under the Free Exercise Clause – it can be simultaneously religious, ethical, and/or philosophical. *Nat'l Inst. for Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2379 (2018) (*NIFLA*) (Kennedy, J., concurring, Kennedy, J., concurring, with Roberts, Chief J., Alito, J., and Gorsuch, J., joining). Here, MacDonald cited multiple Bible verses and other religious materials in support of her religious exception requests. 2-ER-133-37 (Doc No. 66). If such citations do not indicate

that MacDonald's beliefs are "rooted in religion," it is difficult to surmise what would. This is perhaps why courts, including this one, generally accept plaintiffs' assertions of sincere religious beliefs. *Keene*, 2023 U.S. App. LEXIS 11807 at *5 [quoting *Thomas*, 450 U.S. at 714].

The District Court found MacDonald's reliance on *Thomas*, *Hobbie*, and *Frazee* unpersuasive, noting that those cases "concern unemployment benefits, a public benefit not at issue in the present case." 1-ER-51 (Doc. No. 35). The same goes for *Sherbert v. Verner*, whose applicability is discussed in greater detail below. *Id.* This Court, however, relied on *Thomas* in deciding *Keene* – which, like this case, involved a government employer who rejected religious exception requests from religious employees unable to receive COVID-19 vaccines due to their connection to abortion. *Keene*, 2023 U.S. App. 11807 at **4-5 [citing *Thomas*, 450 U.S. at 714]. This Court also found *Thomas* instructive in *Bacon* concerning the issue of whether "an inroad on religious liberty" can be justified absent a "showing that it is the least restrictive means of achieving some compelling state interest." *Bacon*, 104 F.4th at 751 [quoting *Thomas*, 450 U.S. at 718]. In rejecting MacDonald's reliance on *Thomas* and its progeny, the District Court

effectively disregarded this Court's instruction in *Dodge* that constitutional principles established in other contexts can still apply "***even in novel factual circumstances***' if the 'case involves ***mere application of settled law to a new factual permutation***.'" *Dodge*, 56 F.4th at 784 (emphasis added).

One last note concerning *Thomas* and its progeny: The Supreme Court declared in *Thomas* that religious beliefs need not be acceptable, to government entities to merit First Amendment protection. *Thomas*, 450 U.S. at 714 (emphasis added). MacDonald's beliefs were clearly unacceptable to the OHSU Officials, as MacDonald's beliefs, and her adherence to them, ultimately got her fired. 2-ER-126-27 (Doc No. 6); 3-ER-549, 554 (Doc. No. 1). The Free Exercise Clause prohibits the OHSU Officials from taking such a stance: "When the power, prestige and financial support of government is placed behind" – or, for that matter, against – "a particular religious belief, ***the indirect coercive pressure upon religious (individuals) to conform to the prevailing approved religion is plain***." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 221 (1963) (emphasis added).

### 3. *Sherbert v. Verner*, 374 U.S. 398 (1963)

The predecessor of *Thomas* and its progeny, *Sherbert* involved an employee who, like MacDonald, held a sincere religious belief that conflicted with an employment-related duty. *Sherbert*, 374 U.S. at 399-401. In a highly influential decision, the Supreme Court declared that "[g]overnment ***may neither compel affirmation of a repugnant belief … nor <u>penalize</u> nor discriminate against individuals or groups because they hold views abhorrent to the authorities***." *Id.* at 402 [internal citations omitted]. The OHSU Officials did that here: As the University's open and staunch institutional support of abortion rights indicates, MacDonald's abortion-based religious objection receiving a COVID-19 vaccine was a view abhorrent to the authorities. *See* 2-ER-126-27, 139, 152-153 (Doc No. 66). The OHSU Officials effectively gave MacDonald a choice: Affirm the repugnant belief that taking a vaccine whose manufacturers used cells from aborted babies in its production does not align with her religious principles or lose her job. 2-ER-139 (Doc No. 66). When she refused to affirm that repugnant belief by receiving a COVID-19 vaccine, the Committee fired her for it.

3-ER-554 (Doc No. 1). This, the First Amendment does not allow. *Sherbert*, 374 U.S. at 402.

*Sherbert* also requires that any substantial burden placed on the free exercise of religion be justified by a compelling state interest. *Sherbert*, 374 U.S. at 403. A compelling interest involves conduct that "***invariably*** pose[s] some substantial threat to public safety, peace, or order." *Id.* (emphasis added). "Invariably" is the key word: The OHA's Vaccine Mandate did not require all healthcare workers in Oregon to be vaccinated against COVID-19. Or. Admin. R. 333-019-1010(3)(a), (4), (5)(a), (6). The OHA presumably would not have allowed for religious exceptions if unvaccinated healthcare workers invariably endangered patients and co-workers in the healthcare facilities where they worked.

In *Sherbert*, the Supreme Court declared that "if the purpose or effect of a law is to ***impede the observance of one or all religions or is to discriminate invidiously between religions***, that law is constitutionally invalid." *Sherbert*, 374 U.S. at 404 (emphasis added) [quoting *Braunfeld v. Brown*, 366 U.S. 599, 607 (1961)]. Defendants collectively did that here: When the University, acting through the Board, enacted the policy declaring that it would not grant religious

exceptions from the Vaccine Mandate to those who held beliefs like MacDonald's and the Committee enforced that policy, Defendants impeded the observance of religions that oppose supporting abortion and discriminated invidiously between religions. 3-ER-126-27, 139 (Doc No. 66); 3-ER-554 (Doc. No. 1). This, the Free Exercise Clause unequivocally prohibits. *Sherbert*, 374 U.S. at 404.

Finally, the Supreme Court made clear in *Sherbert* that "no State may 'exclude individual Catholics, Lutherans, Mohammedans, Baptists, Jews, Methodists, Non-believers, Presbyterians, or the members of any other faith, ***because of their faith,*** or lack of it, from receiving the benefits of public welfare legislation." *Sherbert*, 374 U.S. at 410 (emphasis added) [quoting *Everson v. Bd. of Educ.*, 330 U.S. 1, 16 (1947)]. Because the University's policy implied that adherents to some faiths would receive the benefit of a religious exception but not others, a reasonable person in the OHSU Officials' stead would have known they were violating MacDonald's constitutional right of free exercise.

### B. Pandemics do not Give Government Employers Free Rein to Discriminate on the Basis of Religion.

More than 100 years of jurisprudence from both the Supreme Court and this Court makes clear that public emergencies do not give

government entities *carte blanche* to cast religious liberty or other constitutionally protected freedoms by the wayside. To wit:

### 1. *Keene v. City & Cnty. of San Francisco,* 2023 U.S. App. LEXIS 11807 (9th Cir. May 15, 2023)

Decided just two months before the District Court dismissed MacDonald's § 1983 claim, *Keene* directly involved the Pandemic. In *Keene*, this Court simply reaffirmed what the Supreme Court has repeatedly recognized in multiple cases discussed below: Opposition to abortion can be, and often is, religious. *Keene*, 2023 U.S. App. LEXIS at *5. *Keene* only makes the contours of MacDonald's right to abstain from receiving a COVID-19 vaccine based on the vaccines' connection to abortion even clearer than they already were in October 2021. In fact, MacDonald pointed the District Court to this Court's ruling in *Keene* before the District Court dismissed MacDonald's § 1983 claim, yet the District Court still failed to follow *Keene*. 2-ER-246-47 (Doc. No. 30) ["As the Ninth Circuit very recently declared, the need to halt the spread of COVID-19 did not automatically make it necessary for government employers to run roughshod over their employees' religious freedom" (citing *Keene*, 2023 U.S. App. 11807 at *7)].

*Keene*, like this case, involved a government employer's denial of religious exceptions from the employer's COVID-19 vaccination requirement to employees in a display of hostility to the employees' anti-abortion beliefs. *Keene*, 2023 U.S. App. LEXIS at *6. In *Keene*, the Ninth Circuit overturned a lower court's decision because the lower court failed to consider that the appellants' government employer had forced them to choose between keeping their faith and keeping their jobs. *Id.* The OHSU Officials, acting on the University's behalf, presented MacDonald with such a choice here. 2-ER-139 (Doc No. 66). The Ninth Circuit also rejected the City and County of San Francisco's ("CCSF") argument that abortion-based opposition to COVID-19 vaccines is a mere "personal preference," not a sincere religious belief, and noted that the pressure CCSF placed on the appellants to violate their beliefs could amount to irreparable harm. *Keene*, 2023 U.S. App. 11807 at *6; *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ["The loss of First Amendment freedoms, for even minimal periods of time, ***unquestionably*** constitutes irreparable injury" (emphasis added)].

### 2. *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

While *Jacobson* lets states infringe on constitutional rights to a very limited degree when necessary to protect public health and safety, it also cautions courts to "***guard with firmness every* right *appertaining to life, liberty, or property*** as secured to the individual by the Supreme Law of the Land" – i.e., the U.S. Constitution. *Id.* at 38 (emphasis added). Such rights include religious liberty, including the right to abstain from physical acts a religious practitioner believes would violate her faith without fear of punishment from a government that openly disapproves of her beliefs. *Emp't Div., Ore. Dep't of Human Res. v. Smith*, 494 U.S. 872, 877 (1990).

In this case, OHSU policy effectively declared particular persons – namely, MacDonald and others unable to receive COVID-19 vaccines due to the vaccines' connection to abortion – to be a danger to the public. 2-ER-126-27 (Doc No. 66); 3-ER-551-52 (Doc. No. 1). A reasonable person in the OHSU Officials' position would have known OHSU's policy was arbitrary and unreasonable: Those who sought religious exceptions from the OHA's Vaccine Mandate for reasons unrelated to abortion, or who sought medical exceptions, presumably

presented the same danger of contracting and spreading COVID-19 to fellow employees and patients as those who share MacDonald's beliefs.

Furthermore, this case is distinguishable from *Jacobson* in that the vaccination law at issue in *Jacobson* did not allow for religious exceptions, whereas the OHA's Vaccine Mandate did. *Jacobson*, 197 U.S. at 24; Or. Admin. R. 333-019-1010(3)(a), (4), (5)(a), (6). In other words, even if COVID-19's Delta variant was as deadly as Defendants claim and the rate of individuals infected with the Delta variant was, in fact, soaring [3-ER-484 (Doc No. 22)] – and MacDonald does not concede either point – the threat was not so deadly that the OHA deemed it necessary to prohibit the Committee, acting on the University's behalf, from granting religious exceptions to those who sought them.

The University declared to MacDonald and other employees that the OHSU Officials "expect[ed] that very few of the submitted requests for religious exceptions would be approved." 2-ER-126 (Doc No. 66); 3-ER-551 (Doc. No. 1). Implicit in that statement is that the Committee would approve <u>***some***</u> religious exception requests, and then only for individuals whose beliefs the OHSU Officials deemed acceptable. *Id.* The Supreme Court in *Jacobson* warned against that very danger.

*Jacobson*, 197 U.S. at 28. The OHSU Officials should thus have to answer for their failure to grant religious exceptions to those whose religious beliefs the University disapproved of. *Thomas*, 450 U.S. at 714 [declaring that "religious beliefs need not be acceptable" to government entities "to merit First Amendment protection"].

### 3. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020)

*Diocese of Brooklyn*, upon which this Court relied in *Keene* and *Bacon*, involves the early part of the Pandemic: *Diocese of Brooklyn* concerned an emergency order, issued by New York's governor, "that impose[d] very severe restrictions on attendance at religious services in areas" identified as COVID-19 danger zones. *Id.* at 15-16. In invalidating the emergency order so churches, synagogues, and other houses of worship could resume hosting religious services, the Supreme Court declared the order to be neither neutral nor generally applicable, as the order greatly limited the number of people a house of worship in a danger zone could host while giving secular businesses free reign to determine how many people they could allow on the premises. *Id.* at 18.

While the Supreme Court recognized in *Diocese of Brooklyn* that "[s]temming the spread of COVID-19 is unquestionably a compelling

interest," the high court also found it "hard to see how the challenged regulations are 'narrowly tailored.'" *Diocese of Brooklyn*, 542 U.S. at 18. The same is true here: A regulation substantially burdening religion is not "narrowly tailored if it 'proscribe[s] more religious conduct than is necessary to achieve [the government's] stated ends.'" *Lukumi*, 508 U.S. at 538. The OHSU Officials, acting on the University's behalf, did not need to disqualify from receiving religious exceptions those employees who opposed receiving COVID-19 vaccines due to the vaccines' connection to abortion: The University could have provided accommodations that would have let MacDonald continue working. *See* 2-ER-96-97, 141-149 (Doc No. 66) [indicating that a comparably sized hospital serving the same region granted MacDonald a religious exception request after hiring her and that the University could have allowed nurses in its Mother Baby Unit to telecommute] and 3-ER-526, 528 (Doc. No. 1). So long as the University took measures to limit the likelihood that MacDonald and other employees who received religious exceptions would contract and transmit COVID-19 to OHSU's other employees or patients – and the OHA contemplated that such measures were available [*see* Or. Admin. R. 333-019-1010(4)] – the state's

compelling interest in halting COVID-19's spread would have been served without substantially burdening religious conduct. *Id.*

In *Diocese of Brooklyn*, the Supreme Court could not view the New York governor's emergency order "as neutral because it singles out houses of worship for especially harsh treatment." *Diocese of Brooklyn*, 592 U.S. at 16. The same is true here: The OHSU Officials, acting on OHSU's behalf, singled out employees like MacDonald for especially harsh treatment, informing them before they even requested religious exceptions that their requests would be denied, threatening them with firing if they did not get vaccinated against COVID-19, and carrying out that threat. 2-ER-126-27, 139 (Doc No. 66); 3-ER-549, 551-52, 554 (Doc. No. 1). This, the First Amendment does not allow – not even during a pandemic.

### C. The Supreme Court Has Recognized that Opposition to Abortion Can Be, and Frequently is, Religious in Nature.

Since the advent of abortion's legalization throughout the United States, the Supreme Court has repeatedly and consistently recognized that opposition to abortion can be, and often is, rooted in religion:

> "We forthwith acknowledge our awareness of the sensitive nature of the abortion controversy, of the vigorous opposing

> views even among physicians, ***and of the deep and seemingly absolute convictions that the subject inspires***. One's philosophy, one's experiences, ***one's religious training, one's attitudes toward life*** and family and their values, and the moral standards one establishes and seeks to observe, are all likely to influence and color one's thinking about abortion."

*Roe v. Wade*, 410 U.S. 113, 116 (1973) (emphasis added), *overruled by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).

It is precisely because the Supreme Court rightly recognized that abortion inspires deep religious convictions opposing the procedure, which Christians like Plaintiff consider murderous, that the Supreme Court has long recognized individuals' religious right to abstain from participating in or supporting abortion in any way. That started from the outset of abortion's nationwide legalization in the United States: In *Doe v. Bolton*, 410 U.S. 179 (1973) decided on the same date as *Roe*, the high court declared that healthcare workers have "the right to refrain, ***for religious or moral reasons***, from participating in the abortion procedure." *Bolton*, 410 U.S. at 197-98 (1973) (emphasis added).

From a religious practitioner's perspective, "participating" in or "supporting" abortion can take multiple forms: In *Harris v. McRae*, 448 U.S. 297 (1980), for instance, the Supreme Court upheld the Hyde

Amendment, the federal law that protects taxpayers who oppose abortion on religious grounds from having to fund abortions with their tax dollars. *Harris*, 448 U.S. at 319-20. And *Burwell v. Hobby Lobby Stores, Inc.*, 572 U.S. 682 (2014), which involved a national for-profit craft store chain, and *Little Sisters of the Poor v. Sts. Peeter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020) (*Little Sisters*), which involved a Roman Catholic operator of homes for the elderly poor, both involved regulations promulgated by the federal Department of Health & Human Services ("HHS") requiring the entities involved to either pay for contraceptives – including, but not limited to, abortifacient drugs – for their employees or pay massive fines for not doing so. *Hobby Lobby*, 573 U.S. at 691; *Little Sisters*, 591 U.S. at 664. Both the craft store chain and the Catholic organization had religious objections to abortion and believed providing abortifacient drugs for employees would violate their sincerely held religious beliefs prohibiting "facilitating" or "complicity" in abortions. *Hobby Lobby*, 573 U.S. at 691; *Little Sisters*, 591 U.S. at 670. In both cases, the Supreme Court held that the HHS regulations placed an unlawful substantial burden on the entities' free exercise of religion.

Particularly powerful are the Supreme Court's words in *Hobby Lobby*:

> "[Hobby Lobby's owners] have religious objections to abortion, and according to their religious beliefs the … contraceptive methods at issue are all abortifacients. If the owners comply with the HHS mandate, they believe they will be facilitating abortions, and if they do not comply, they will pay a very heavy price – as much as $1.3 million per day, or about $475 million per year. … ***If these consequences do not amount to a substantial burden, it is hard to see what would.***"
>
> *Hobby Lobby*, 573 U.S. at 691 (emphasis added).

Here, MacDonald, like the Hobby Lobby store chain, had religious objections to abortion. 2-ER-133-37 (Doc No. 66); 3-ER-540-47 (Doc. No. 1). The Committee, acting pursuant to University policy on the University's behalf, made MacDonald's exercise of her religion expensive, firing her because she could not violate her beliefs concerning COVID-19 vaccines' connection to abortion. 3-ER-554 (Doc. No. 1). MacDonald was out of work for roughly nine months, from her placement on unpaid leave by the University in October 2021 until another hospital hired her in June 2022. 2-ER-96 (Doc. No. 66); 3-ER-489 (Doc. No. 22); 3-ER-554 (Doc. No. 1). By the standard of "expensiveness," it is beyond dispute that the OHSU Officials substantially burdened MacDonald's religious beliefs.

In *Little Sisters*, the Supreme Court reaffirmed its holding in *Hobby Lobby* that HHS' contraceptive mandate substantially burdened organizations with complicity-based objections to abortion. *Little Sisters*, 591 U.S. at 681 [citing *Hobby Lobby*, 573 U.S. at 736]. MacDonald has raised such a complicity objection here. 2-ER-133-34 (Doc No. 66) ["(T)he recipient of (an abortion-tainted vaccine) ***is an immediate participant in the commission of continuous theft of human remains obtained through deliberate killing***" (emphasis added)]; *see also* 3-ER-523-24, 543-44 (Doc. No. 1). The OHSU Officials argued before the District Court that MacDonald's statement that she had "a clear ***moral*** duty to refuse the use of medical products, including certain vaccines, that are created from human cells derived from abortion at any stage of the vaccine's development" indicated that her beliefs were not, in fact, religious. 3-ER-488 (Doc. No. 22) (emphasis in the original). This argument is weak at best for two reasons: First, as the Supreme Court has recognized, a belief can simultaneously be moral and religious. *NIFLA,* 585 U.S. at 779 (Kennedy, J., concurring). Second, the OHSU Officials have essentially admitted that they penalized MacDonald for failing to articulate her beliefs "with the

clarity and precision that a more sophisticated person might employ" – something the Free Exercise Clause prohibits. *Thomas*, 450 U.S. at 715.

Also relevant here is *NIFLA,* 585 U.S. 755: The OHSU Officials argued before the District Court that the Committee, when evaluating religious exception requests, had no way of speedily determining whether a belief was, in fact, religious or simply "couched in religious terms." 3-ER-487-88, 499, 504 (Doc No. 22). Justice Kennedy addressed that issue directly in his concurrence in *NIFLA*, declaring that laws requiring crisis pregnancy centers to let women know where they could obtain abortions "compel individuals to contradict their most basic beliefs grounded in basic philosophical, ethical, or religious precepts, ***or all of these***." *NIFLA*, 585 U.S. at 779 (Kennedy, J., concurring) (cleaned up) (emphasis added). In other words, a belief or practice need not be exclusively religious to be accorded First Amendment protection: As stated *supra*, the belief need only be rooted in religion. *Thomas*, 450 U.S. at 713. MacDonald's religious beliefs and practices concerning abortion easily meet that standard here. 2-ER-133-37 (Doc No. 66); 3-ER-540-47 (Doc. No. 1).

Based on the foregoing, the contours of MacDonald's constitutional right to reject a COVID-19 vaccine and remain employed as a healthcare worker were clear enough that a reasonable person in the OHSU Officials' stead would have known they were violating that right. This Court should thus reverse the District Court's dismissal of MacDonald's § 1983 claim.

## III. The District Court Erred in Granting Summary Judgment on MacDonald's Title VII Claim Because MacDonald Raised a Triable Issue of Fact Concerning Discriminatory Motives.

Title VII – which applies as much to government employers as it does to private employers – goes above and beyond the Free Exercise Clause: Title VII "gives favored treatment to religious practices, ***<u>affirmatively</u>*** ***<u>obligating</u>*** [government] employers ***<u>not</u> to discharge any individual because of the individual's religious observance or practice***." *Equal Emp't Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) (*Abercrombie & Fitch*) (cleaned up) (emphasis added) [quoting 42 U.S.C. § 2000e-2(a)]. This principle applies even, if not especially, during a pandemic, when government employers may be more inclined to discard religious freedom in the

name of protecting public health and safety. *Keene*, 2023 U.S. App. LEXIS 11807 at *7 [quoting *Diocese of Brooklyn*, 592 U.S. at 20].

An employer facing a Title VII failure-to-accommodate claim has either of two defenses at its disposal: The employer must show "that it initiated good faith efforts to reasonably accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (*Peterson*) (internal quotation marks omitted). The University, the employer in this case, cannot show that it initiated good-faith efforts to accommodate MacDonald's religious practices, having disqualified MacDonald from receiving a religious exception to the OHA's Vaccine Mandate before she ever applied and fired her after denying her religious exception request. 2-ER-126-27, 139 (Doc No. 66); 3-ER-549, 551-52, 554 (Doc. No. 1).

That leaves undue hardship. In *Groff*, 600 U.S. 447, the Supreme Court defined "undue hardship" to mean "'substantial additional costs' or 'substantial expenditures.'" *Id.* at 470 [quoting *Trans World Airlines v. Hardison*, 432 U.S. 63, 83 (1977)]. The "undue hardship" cannot come from hostility toward accommodating a specific religious belief. *Id.* at

472. This is especially true of government employers – which, incidentally, the employer in *Groff* (the U.S. Postal Service) was. *Id.* at 454; *see also* U.S. Const. art. I, § 8, cl. 7.

The Supreme Court has declared multiple times in the last decade that in Title VII failure-to-accommodate cases, employers' motives matter. *See*, e.g., *Abercrombie & Fitch*, 575 U.S. at 773. As stated *supra*, a hardship attributable to animosity "to the very notion of accommodating a religious practice ***cannot*** ***be considered 'undue.'***" *Groff*, 600 U.S. at 472 (emphasis added). While the foregoing quote from *Groff* refers to other employees' hostility toward religion, it applies with equal force to employers given Title VII's purpose of outlawing religious discrimination: "If bias or hostility to a religious practice or to a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself." *Id.*

When the employer involved is a government employer, it is especially "***necessary*** ***to probe the sincerity for the government's justifications for the policy*** to evaluate whether they 'were but pretexts for discriminating against religion.'" *Univ. of Colo.*, 100 F.4th at 1275 (emphasis added). "Pretext means … a phony reason for some

action." *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (cleaned up). Governments have been known to abuse their power by pretextually asserting the need to preserve public health and safety – even, if not especially, during the Pandemic. *See Diocese of Brooklyn*, 592 U.S. at 19 [concerning the targeting of religious congregations in the name of protecting the public during the COVID-19 pandemic] and *Mayorkas*, 143 S. Ct. at 1315 (Gorsuch, J., concurring) [calling "fear and the desire for safety … powerful forces" that, during the Pandemic, motivated state governments to justify repeated infringements on the right of houses of worship to hold services when other gathering places remained open]. A plaintiff can overcome an employer's showing of undue hardship "with specific, substantial evidence of pretext." *Bannister v. Bd. of Trs.*, 2005 U.S. Dist. LEXIS 59609 at *14 (D. Idaho Jan. 18, 2005) [citing *Peterson*, 358 F.3d at 606]; *see also Abercrombie & Fitch*, 575 U.S. at 773 [recognizing failure to accommodate as a form of disparate treatment] and *Davis*, 520 F.3d at 1089 [stating that to survive summary judgment on a disparate treatment claim, a plaintiff must show that employer's proffered reason is pretextual].

In this case, MacDonald can show that her former employer, the University, being openly and unabashedly pro-abortion, disqualified her from receiving a religious exception from the OHA's Vaccine Mandate before she ever applied for one. 2-ER-126-27 (Doc No. 66). Then, when MacDonald refused to receive a COVID-19 vaccine due to her sincere religious convictions, the University fired her for it. 3-ER-554 (Doc No. 1). This means OHSU fired MacDonald "because of" her sincere religious convictions – something Title VII explicitly prohibits. *Abercrombie & Fitch*, 575 U.S. at 773 [quoting 42 U.S.C. § 2000e-2(a)(1)]. The words "because of" in Title VII indicate that "an individual's actual religious practice ***may <u>not</u> be a motivating factor***" in an employer's decision to fire someone. *Id.* (emphasis added).

The University's own words give rise to an inference of pretext: In its motion for summary judgment, the University argued that accommodating Plaintiff would have created "staffing issues" and "impaired critical operations." 2-ER-224 (Doc. 55). MacDonald, however, provided evidence in response indicating that the University, "through its observed actions, did not care about our needs on the floor." 2-ER-96 (Doc. No. 66). Furthermore, news media covering the Pandemic in 2021

reported that hospitals throughout Oregon were understaffed and overflowing with COVID-10 patients. *See*, e.g., Erin Ross, *The Surge of COVID-19 Patients is Stretching Oregon Hospitals' Limits*, OPB.org (August 21, 2021)[4] and Andrew Jacobs, *'Nursing is in Crisis': Staff Shortages Put Patients at Risk*, NYTimes.com (Aug. 21, 2021, updated Oct. 20, 2021).[5] It thus strains credulity for the University to assert that accommodating MacDonald would have created staffing issues when firing MacDonald perhaps created even bigger staffing issues in an all-hands-on-deck public health emergency.

In granting the University's motion for summary judgment, the District Court declared that the University's "allegedly discriminatory motives are not material to MacDonald's Title VII claim for failure to accommodate, and so any related disputes of material fact do not preclude summary judgment here." 1-ER-11-12 (Doc. 73). As illustrated *supra*, the Supreme Court has declared otherwise. Because summary

[4] Last viewed online on April 16, 2024 at https://www.opb.org/article/2021/08/21/oregon-covid-19-cases-icu-patients-hospital-delta-variant-hospitalizations/.

[5] Last visited online on April 17, 2024 at https://www.nytimes.com/2021/08/21/health/covid-nursing-shortage-delta.html.

judgment is appropriate ***only*** when there are no triable issues of material fact [Fed. R. Civ. P. 56(a) and MacDonald has raised a triable issue of fact concerning the University's *post hoc* assertion of undue hardship as a pretext to mask discriminatory motives, this Court should reverse the District Court's grant of summary judgment to the University.

## CONCLUSION

The Free Exercise Clause of the U.S. Constitution's First Amendment "commits government itself to religious tolerance, and upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices, ***all officials must remember their own high duty to the Constitution and the rights it secures***." *Masterpiece Cakeshop*, 584 U.S. at 638 (emphasis added) [quoting *Lukumi*, 508 U.S. at 547]. Title VII goes even further, "giving favored treatment to religious practices" and "affirmatively obligating" government employers "not to discharge any individual because of the individual's religious observance or practice." *Abercrombie & Fitch*, 575 U.S. at 775. Those principles apply even during a pandemic.

In declaring which religious beliefs were unworthy of accommodation, then denying MacDonald a religious accommodation and ultimately firing her for having and adhering to those beliefs, the OHSU Officials did not remember their own high duty to the Constitution and the rights it secures – they willfully disregarded that duty completely. 2-ER-126-27 (Doc. No. 66) and -ER- Vol. 3 at 551-552 (Doc. No. 1). Because a reasonable official in the OHSU Officials' stead would have recognized the contours of MacDonald's constitutionally protected religious freedom to abstain from receiving a COVID-19 vaccine due to the vaccines' connection to abortion while remaining employed in the healthcare profession and thereby avoided violating that freedom, the OHSU Officials deserve to be stripped of qualified immunity and held accountable accordingly.

Concerning Title VII, MacDonald has raised a triable issue of fact concerning whether OHSU, her former employer, unlawfully and pretextually used undue hardship to justify its decision to purge its payroll of employees who opposed receiving COVID-19 vaccines based on religious objections due to the vaccines' connection to abortion. Undue hardship cannot be based on hostility toward a particular

religious belief lest Title VII be rendered meaningless. MacDonald has also raised a triable issue of fact concerning whether OHSU would have incurred substantial increased costs in accommodating MacDonald.

Based on the foregoing, the District Court erred in granting Defendants' motion to dismiss MacDonald's § 1983 claim and OHSU's motion for summary judgment on MacDonald's Title VII failure-to-accommodate claim. Accordingly, this Court should reverse the District Court's decision on both claims and remand for further proceedings.

Respectfully submitted,

Dated: December 11, 2024

By: */s/ RAY D. HACKE*

RAY D. HACKE
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Suite 217
Salem, OR 97301
(503) 917-4409
rhacke@pji.org

MATTHEW B. MCREYNOLDS
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95826
(916) 857-6900
mmcreynolds@pji.org

*Counsel for Plaintiff-Appellant*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** 24-4852

I am the attorney or self-represented party.

**This brief contains 10,327 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.
[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3). 1
[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.
[ ] complies with the length limit designated by court order dated ______________.
[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ RAY D. HACKE **Date** December 11, 2024

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases**
**Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number(s)** 24-4852

The undersigned attorney or self-represented party states the following:

[ ] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[XX] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

- *Jimenez-Mendez et al. v. Or. Health & Sci. Univ.*, D. Or. Case No. 3:23-CV-01190-IM;
- *Khimich v. Or. Health & Sci. Univ.*, Case No. 3:23-CV-01239-YY
- *Peters v. Or. Health & Sci. Univ.*, D. Or. Case No. 3:23-CV-1536-YY

**Signature** /s/ RAY D. HACKE **Date** December 11, 2024

# ADDENDUM

# ADDENDUM

**42 U.S.C. Section 2000e-2**

**(a) Employer practices**

It shall be an unlawful employment practice for an employer—

**(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

**(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

**42 U.S.C. Section 2000e**

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

**U.S. Const. amend. I**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, I electronically filed the foregoing Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

Dated: December 5, 2024

*/s/ RAY D. HACKE*
Ray D. Hacke
Attorney for Plaintiff-Appellant
BRITTANY MacDONALD