**APPEAL NO. 24-4852**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

BRITTANY MacDONALD

*Plaintiff-Appellant*,

v.

OREGON HEALTH & SCIENCE UNIVERSITY, A Public Corporation and Governmental Entity, WAYNE MONFRIES, An Individual, RUTH BEYER, An Individual, MAHTAB BRAR, An Individual, JAMES A. CARLSON, An Individual, DANNY JACOBS, An Individual, SUSAN KING, An Individual, CHAD PAULSON, An Individual, SUE STEWARD, An Individual, STEVE ZIKA, An Individual, and DOES 1-50, Inclusive

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Oregon
Case No. 3:22-CV-01942-IM / Hon. Karin J. Immergut

**APPELLANT'S REPLY TO DEFENDANTS' ANSWERING BRIEF**

RAY D. HACKE
PACIFIC JUSTICE INSTITUTE
P.O. Box 5229
Salem, OR 97304
(503) 917-4409
rhacke@pji.org

MATTHEW B. MCREYNOLDS
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
(916) 857-6900
mattmcreynolds@pji.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .................................................................................................. iv

INTRODUCTION .................................................................................................. 1

ARGUMENT .................................................................................................. 3

I. The court Should Strip the OHSU Officials of Qualified Immunity Because MacDonald sufficiently Established the Contours of her Constitutional Right to be Free From Government Hostility Toward MacDonald's Religious Beliefs ..........................................5

A. Acting on the University's Behalf, OHSU Officials Unconstitutionally Displayed Governmental Hostility Toward MacDonald's Religious Beliefs ........7

B. MacDonald did not Need to Produce a Case Directly on Point to Meet her Burder Here .................................................................................. 11

II. MacDonald Raised a Triable Issue of Material Fact Concerning the Credibility of OHSU's Undue Hardship Assertion for Purposes of her Title VII Failure-to-Accommodate claim .................................................................................. 16

A. Evidence of Discriminatory Motives is Relevant to the Undue Hardship Analysis as it Goes to the Employer's Credibility… .......................................................18

B. The District Court Erroneously Spun the Evidence in This Case in OHSU's favor .................................................................................. 23

CONCLUSION .................................................................................................. 27

CERTIFICATE OF SERVICE ..................................................................................29

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) .......... 17, 18, 25

*Arizona v. Mayorkas*
143 S. Ct. 1215 (2015) .......... 10

*Ashcroft v. al-Kidd*
563 U.S. 731 (2011) .......... 6, 7, 11

*Bacon v. Woodward*
104 F.4th 744 (9th Cir. 2024) .......... 13

*Bodett v. CoxCom, Inc.*
366 F.3d 736 (9th Cir. 2004) .......... 18

*Chuang v. Univ. of Cal. Davis*
225 F.3d 1115 (9th Cir. 2000) .......... 13, 14, 17, 19, 22, 23, 24, 26

*Church of the Lukumi Babalu Aye v. City of Hialeah*
508 (1993) U.S. 520 .......... 3, 4, 12, 13

*Davis v. Team Elec. Co.*
520 F.3d 1080 (9th Cir. 2008) .......... 10, 17, 23, 25, 26

*Dodge v. Evergreen Sch. Dist. #114*
56 F.4th 767 (9th Cir. 2022) .......... 5, 6, 11, 15

*Doe v. San Diego Unified Sch. Dist.*
19 F.4th 1173 (9th Cir. 2021) .......... 13

*EEOC v. Abercrombie & Fitch, Inc.*
575 U.S. 768 (2015) .......... 3, 18, 19, 20, 21, 22, 23

*EEOC v. Burlington N. Sante Fe Ry. Co.*
902 F.3d 916 (9th Cir. 2018) .......... 4, 21

*Eng v. Cooley*
552 F.3d 1062 (9th Cir. 2009) .......... 5

*Frazee v. Ill. Dep't of Emp't Sec.*
489 U.S. 829 (1989)........................................................................................................11

*Glasson v. City of Louisville*
518 F.2d 899 (6th Cir. 1975) ..............................................................................................5

*Godwin v. Hunt Wesson, Inc.*
150 F.3d 1217 (9th Cir. 1998) ..........................................................................................24

*Groff v. DeJoy*
600 U.S. 447 (2023).................................................................................... 2, 18, 21, 22

*Keene v. City & Cnty. of San Francisco*
2023 U.S. App. LEXIS 11807 (9th Cir. May 15, 2023)......................... 3, 10, 12, 14, 15, 20, 27

*Keene v. City & Cnty. of San Francisco*
2025 U.S. App. LEXIS 2105 (9th Cir. Jan. 30, 2025).................... 3, 4, 8, 10, 14, 19, 20, 21, 27

*Kisela v. Hughes*
584 U.S. 100 (2018)........................................................................................................14

*L.A. Lakers, Inc. v. Fed. Ins. Co.*
869 F.3d 795 (9th Cir. 2017) ............................................................................................10

*Lewis-Williams v. Bay Area Rapid Transit Dist.*
2024 U.S. Dist. LEXIS 234467 (N.D. Cal. Dec. 30, 2024)............................................... 23, 26

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*
584 U.S. 617 (2018)........................................................................... 7, 8, 9, 12, 13, 14

*Roe v. Wade*
410 U.S. 113 (1973) .......................................................................................................26

*Roman Catholic Diocese of Brooklyn v. Cuomo*
592 U.S. 14 (2020)......................................................................... 6, 10, 11, 13, 14, 21

*Sherbert v. Verner*
374 U.S. 398 (1963).................................................................................................. 7, 10

*Thomas v. Rev. Bd., Ind. Emp't Sec. Div.*
450 U.S. 707 (1981)....................................................................... 9, 12, 14, 15, 16, 17

*Thomas, Sherbert, Hobbie v. Unemployment Appeals Comm'n of Fla.*
480 U.S. 136 (1987)........................................................................................................11

*Villareal v. City of Laredo*
94 F.4th 374 (5th Cir. 2024) ..............................................................................................5

**STATUTES & ADMINISTRATIVE RULES**

Fed. R. Civ. P. 56(a) .......... 16

42 U.S.C. § 1983 (Title VII) .......... 2

42 U.S.C. § 2000e-2(a)(1) .......... 20

42 U.S.C. § 2000e-2(m) .......... 20

Or. Admin. R. 333-019-1010(3)(a) .......... 22

Or. Admin. R. 333-019-1010(5)(a) .......... 22

## INTRODUCTION

Notwithstanding assertions that Defendants OREGON HEALTH & SCIENCE UNIVERSITY ("OHSU" or the "University," and collectively with all other Defendants-Appellees "Defendants") *et al.* make to the contrary throughout their answering brief, Defendants' decision to deny Plaintiff-Appellant BRITTANY MacDONALD a religious exception to OHSU's COVID-19 vaccination policy had nothing to do with MacDonald's position as a nurse in the University's Mother Baby Unit. The decision had ***everything*** to do with the beliefs that prompted MacDonald to pursue a religious exception request.

As illustrated in MacDonald's opening brief, OHSU's governing board (the "Board"),[1] in its role as the University's policymaker during the COVID-19 pandemic, anticipated that perceived connections between abortion-derived fetal cell lines and COVID vaccines' development would give rise to employees' assertions of conflict between their complicity-based religious objections to abortion and their job-related duty to receive COVID vaccines. OHSU, through its Board, preemptively and inaccurately declared that such abortion-related requests were not truly religious and thus would not be considered for accommodation. Furthermore, the record in this case reflects that OHSU's Vaccine Exception Review Committee

[1] The Board consists of Defendants-Appellees WAYNE MONFRIES, RUTH BEYER, MAHTAB BRAR, JAMES A. CARLSON, DANNY JACOBS, SUSAN KING, CHAD PAULSON, SUE STEWARD, and STEVE ZIKA.

(the "Committee," and collectively with the Board the "OHSU Officials")[2] enforced that policy against employees like MacDonald, denying their religious requests based not on what positions those employees held, but what beliefs the University deemed worthy of accommodation. MacDonald can show that OHSU fired even remote workers who held disqualifying beliefs,[3] even though those workers had a readily available reasonable accommodation that OHSU easily could have provided without incurring "excessive" or "unjustifiable" costs – the legal standard for undue hardship articulated under *Groff v. DeJoy*, 600 U.S. 447, 469 (2023) – and was constitutionally and legally duty-bound to provide under both the U.S. Constitution's First Amendment and Title VII of the 1964 Civil Rights Act.

As a government employer, OHSU should have known better. The same goes for the OHSU Officials, without whom the University could not act. Because no government employer may pre-emptively decide which beliefs are and are not worthy of accommodation, this Court must reverse the District Court's judgments on MacDonald's claims under both 42 U.S.C. § 1983 and Title VII.

---

[2] MacDonald's complaint identifies the Committee's members as "Does 1-50" because MacDonald was unable to learn their identities before filing her complaint.

[3] *See*, e.g., *Babiy v. Ore. Health & Sci. Univ.*, 3:23-CV-01562-AB (Dkt. Rpt. No. 1); *Chegarnov v. Ore. Health & Sci. Univ.*, D. Ore. Case No. 3:23-CV-00281-JR (Dkt. Rpt. No. 1); *Jimenez-Mendez et al. v. Ore. Health & Sci. Univ.*, D. Ore. Case No. 3:23-CV-01190-IM (Dkt. Rpt. No. 1) [concerning plaintiffs Abril Jimenez-Mendez and Inna Khimich]; and *Peters v. Ore. Health & Sci. Univ.*, D. Ore. 3:23-CV-01536 (Dkt. Rpt. No. 1).

## ARGUMENT

A government employer's policy "targeting religious beliefs as such ***is never permissible***." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993) (*Lukumi*) (emphasis added). That rule applies under both the First Amendment's Free Exercise Clause and Title VII. *See id.* [concerning the Free Exercise Clause] and *EEOC v. Abercrombie & Fitch, Inc.*, 575 U.S. 768, 773 (2015) (*Abercrombie & Fitch*) [concerning Title VII]. "Never" means "under no circumstances" – not even during a pandemic.[4] *See*, e.g., *Keene v. City & Cnty. of San Francisco*, 2023 U.S. App. LEXIS 11807 at *6 (9th Cir. May 15, 2023) (*Keene I*) and *Keene v. City & Cnty. of San Francisco*, 2025 U.S. App. LEXIS 2105 at **6-7 (9th Cir. Jan. 30, 2025) (*Keene II*).

Target religious beliefs is exactly what Defendants did here: Acting through its Board, which set University policy concerning employees' duties during the COVID-19 pandemic, OHSU disqualified MacDonald from receiving a religious exception from Oregon's COVID-19 vaccine mandate for healthcare workers (the "Vaccine Mandate") before she ever applied for one. 2-ER-126-27; 3-ER-551-52. The Board openly and brazenly disqualified MacDonald and others based not on what positions they held, but on religious beliefs the Board deemed unworthy of

---

[4] See https://www.dictionary.com/browse/never (last viewed on April 14, 2025) [defining "never" to mean "not ever; not at all"].

accommodation. *Id.* Such beliefs included (1) objections based on manufacturers' use of cells from aborted babies in COVID vaccines' research and development, (2) personal revelations from God concerning COVID vaccines, and (3) beliefs that COVID vaccines were "unclean." *Id.* OHSU then doubled down on its targeting of religious beliefs via the Committee, which enforced OHSU's unconstitutional COVID-19 vaccination policy based not on MacDonald's role at OHSU, but the beliefs that prompted her to seek a religious exception. 2-ER-139; 3-ER-549.

Defendants' targeting of MacDonald's religious beliefs was an unnecessary show of overt hostility of the very sort that both the Free Exercise Clause and Title VII protect against. *See Lukumi*, 508 U.S. at 534 [concerning the Free Exercise Clause] and *Abercrombie & Fitch*, 575 U.S. at 773 [concerning Title VII]. For a government employer to find that an employee's "religious beliefs were insufficient to warrant any accommodations ***can only be described as a 'dignitary affront.'***" *Keene II*, U.S. App. LEXIS 2105 at *7 (emphasis added) [quoting *EEOC v. Burlington N. Sante Fe Ry. Co.*, 902 F.3d 916, 929 (9th Cir. 2018) (*Burlington Northern*)]. Defendants have committed such a dignitary affront against MacDonald here, and the U.S. District Court for the District of Oregon (the "District Court") erred in letting it go unpunished.

Accordingly, the Court should reverse the District Court's decisions dismissing MacDonald's claim against the OHSU Officials under 42 U.S.C. § 1983

and granting summary judgment to OHSU on MacDonald's Title VII failure-to-accommodate claim.

## I. The Court Should Strip the OHSU Officials of Qualified Immunity Because MacDonald Sufficiently Established the Contours of her Constitutional Right to be Free From Government Hostility Toward her Religious Beliefs – Even During a Pandemic.

The key word in qualified immunity is "qualified": State officials lose it – deservedly – by violating "clearly established statutory or constitutional rights ***of which a <u>reasonable person</u> would have known***." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776 (9th Cir. 2022) (emphasis added). "'Officials can still be on notice that their conduct violates established law even in novel factual circumstances' if the 'case involves mere application of settled law to a new factual permutation.'" *Id.* at 784 [quoting *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009)].

Qualified immunity gives government officials a convenient opportunity "***to plead (or feign) ignorance of <u>bedrock constitutional guarantees</u>***." *See*, e.g., *Villareal v. City of Laredo*, 94 F.4th 374, 407 (5th Cir. 2024) (Willett, Circuit J., joined by Elrod, Graves, Higginson, Ho, and Douglas, Circuit Js., dissenting) (emphasis added). It is for this reason that the "reasonable person" standard articulated in *Dodge* exists: "To hold that" government officials are "exonerated from liability [by] merely act[ing] in good faith might foster ignorance of the law or, at least, encourage feigned ignorance of the law." *Glasson v. City of Louisville*, 518 F.2d 899, 909-10 (6th Cir. 1975). While "[t]he law does not expect"

government officials "to be sophisticated constitutional lawyers, because they are charged with" following and upholding the Constitution when acting on the government's behalf, "it is not unreasonable to expect them to have some knowledge of it." *Id.* at 910 (cleaned up).

In this case, as illustrated in MacDonald's opening brief, the OHSU Officials openly and brazenly ignored long-established bedrock constitutional principles concerning the free exercise of religion. Opening Br. at 24-48. Such bedrock principles include government's constitutional duty to avoid singling out religious adherents for discriminatory treatment – even in the face of a pandemic. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19-20 (2020) (*Diocese of Brooklyn*). And just as they did before the District Court, the OHSU Officials are, at best, pleading and, at worst, feigning ignorance, arguing that "at most, the cases MacDonald cites stand for the uncontested and uncontroversial proposition that individuals have a right to the free exercise of religion." Answering Br. at 19, 24. On the contrary, MacDonald has established the contours of her First Amendment-protected right not to be discriminated against by officials acting on her government employer's behalf based not on what her job requires, as Defendants assert throughout their answering brief, but on what her beliefs are.

The establishment of such contours is all MacDonald needed to accomplish. *Dodge*, 56 F.4th at 784 [quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (*al-*

*Kidd*)]. The District Court's erroneous ruling to the contrary notwithstanding [1-ER-48-54], MacDonald has done that here.

### A. Acting on the University's Behalf, the OHSU Officials Unconstitutionally Displayed Governmental Hostility Toward MacDonald's Religious Beliefs.

Chief among the principles the OHSU Officials have consistently ignored from Oregon's enactment of its since-repealed Vaccine Mandate up to now is that "[t]he government, if it is to respect the Constitution's guarantee of free exercise, ***<u>cannot</u> impose regulations that are hostile to the religious beliefs of affected citizens***[.]" *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 584 U.S. 617, 638 (2018) (*Masterpiece Cakeshop*) (emphasis added) [quoting *Lukumi*, 508 U.S. at 534]. That is because OHSU Officials, acting on behalf of the University – an unabashed provider of abortions and related services [2-ER-151-53; 3-ER-536-38] – "penalize[d] and discriminate[d] against individuals … who [held] views abhorrent to the authorities," which the Free Exercise Clause prohibits. *Sherbert v. Verner*, 374 U.S. 398, 402 (1963).

In this case, evidence in the record reflects OHSU's institutional hostility toward MacDonald's beliefs in multiple ways:

■ First and foremost, before any OHSU employee applied for a religious exception to Oregon's Vaccine Mandate, the Board openly disqualified from consideration employees who objected to receiving COVID-19 vaccines based on

the vaccines' connection to abortion. 2-ER-126-27; 3-ER-551-52. The Board also stated that it "***expect[ed] very few of the submitted requests for religious exceptions to be approved.***" *Id.* (emphasis in the original).

Coupled together, the Board's statements indicate OHSU's willingness to grant religious exceptions only to employees with the "right" beliefs. The Board's statements also imply – if not effectively declare – that employees whose objection to receiving COVID vaccines was rooted in complicity-based religious objections to abortion posed a threat to public health and safety. Such declarations, the Free Exercise Clause forbids. *See Masterpiece Cakeshop*, 584 U.S. at 639 [deeming "official expressions of hostility to religion … inconsistent with what the Free Exercise Clause requires"]. Indeed, it is difficult to surmise why someone with MacDonald's beliefs posed a greater danger to public health and safety than someone whose beliefs the OHSU Officials deemed worthy of accommodation. *See Keene II*, 2025 U.S. App. LEXIS 2105 at **4-5 [holding that the potential for its employees to encounter "thousands of … members of the public, regardless of their vaccination status" did not absolve a government employer of liability for failing to seriously consider any religious accommodation" for employees unable to receive COVID vaccines due to the vaccines' connection to abortion].

■ Second, OHSU's institutional hostility, as established by the Board, is evident in the dismissiveness displayed toward religious opposition to abortion:

The Board labeled such beliefs "***personal moral choices and/or a conscientious objection rather than a tenet of a religious faith***." 2-ER-126-27 and 3-ER-551-52 (emphasis added). Never mind that in her religious exception request, MacDonald provided an abundance of scriptures from the Bible indicating that her opposition to abortion and her related inability to receive a COVID vaccine are, in fact, rooted in religion and thus protected under the Free Exercise Clause. 2-ER-133-37; 3-ER-540-47. The Free Exercise Clause prohibits the OHSU Officials from making the call as to what an individual's religious faith prohibits or requires. *Thomas v. Rev. Bd., Ind. Emp't Sec. Div.*, 450 U.S. 707, 716 (1981); *see also Masterpiece Cakeshop*, 584 U.S. at 639 ["It hardly requires restating that government ***has no role in deciding or even suggesting*** whether (someone's) conscience-based (religious) objection is legitimate or illegitimate" (emphasis added)].

■ Lastly, OHSU's institutional hostility toward MacDonald's beliefs is evident in the Committee's enforcement of the University's policy of denying religious exceptions to someone with MacDonald's specific set of beliefs. 2-ER-139; 3-ER-549. Again, the Committee did this not based on MacDonald's job-related duty "to provide intensive, in-person medical care to vulnerable populations," as Defendants assert. Answering Br. at 24. As indicated ***in writing*** in OHSU's denial letter to MacDonald, the Committee denied MacDonald's religious exception request because she expressed beliefs the Board, in its role as OHSU's

policymaker, disapproved of. *See* 2-ER 139 and 3-ER-549. This, the Free Exercise Clause does not allow. *Sherbert*, 374 U.S. at 402.

Defendants argue, albeit in the context of MacDonald's Title VII claim and not her § 1983 claim, that OHSU's accommodation of MacDonald's desire not to participate in abortions undermines MacDonald's assertions concerning religious animus on the University's part. Answering Br. at 41. Never mind that in making that argument, Defendants have admitted that (1) MacDonald's beliefs ***are***, in fact, religious and thus protected under the Free Exercise Clause and (2) Defendants knew it: The COVID-19 pandemic had a way of bringing government entities' hostility toward religion to the surface. *See*, e.g., *Diocese of Brooklyn*, 592 U.S. at 19; *Arizona v. Mayorkas*, 143 S. Ct. 1215, 1215 (2015) (Gorsuch, J., concurring); and *Keene II*, 2025 U.S. 2105 at *7. That is what happened with Defendants here.

Viewing this case in the light most favorable to MacDonald, as this Court must for purposes of the District Court's dismissal of MacDonald's § 1983 claim [*L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017)], the OHSU Officials' actions had nothing to do with MacDonald's position as a nurse in the University's Mother Baby Unit and everything to do with the beliefs that prompted her to seek a religious exception. The Free Exercise Clause prohibits government officials from such targeting of religious beliefs – even in the face of a pandemic. *Keene I*, 2023 U.S. App. 11807 at *7 [citing *Diocese of Brooklyn*, 592 U.S. at 19-

20]. This Court should reverse the District Court's dismissal of MacDonald's § 1983 claim accordingly.

### B. MacDonald did not Need to Produce a Case Directly on Point to Meet her Burden Here.

"A plaintiff need not produce 'a case directly on point'" to establish the existence of a given constitutional right of which a reasonable government official would have known. *Dodge*, 56 F.4th at 784 [quoting *al-Kidd*, 563 U.S. at 741]. As stated *supra*, a plaintiff need only demonstrate that the contours of the right at issue were clear enough that government officials should have recognized that right. *Id.*

In this case, Defendants argue that MacDonald "has not pointed to any clearly established law showing that a hospital system violates the Constitution by terminating the employment of a healthcare professional who refused to receive a state-mandated vaccine during a global pandemic, and whose job required her to provide intensive, in-person medical care to vulnerable populations." Answering Br. at 23-24. MacDonald did not need to: MacDonald has provided a wealth of constitutional law jurisprudence establishing the contours of the right at issue, thereby meeting her burden under *Dodge*. Opening Br. at 21-48. To summarize:

■ *Thomas*, *Sherbert*, *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136 (1987), and *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829 (1989) all concern religious rights in the employment context, particularly where government declares certain beliefs unworthy of accommodation. Opening Br. at 28-34.

*Thomas* is especially instructive here given the OHSU Officials' labeling of abortion-based religious opposition to receiving COVID vaccines as a "personal preference" that "[is] not considered to be [a] religious belief" and related denials of religious exceptions to anyone who sought them on that basis. 2-ER-126-27; 3-ER-551-52. The Supreme Court chastised a lower court for similarly labeling an employee's religious objection to an employment-related duty. *Thomas*, 450 U.S. at 714. The Supreme Court did so because the Free Exercise Clause forbids the OHSU Officials from deciding whether employees correctly perceived their faiths' commands. *Id.* at 716. Yet the OHSU Officials did that very thing here.

In deciding *Keene I*, this Court dutifully followed the Supreme Court's instructions in *Thomas* to the letter, declining to second-guess employees' assertions of sincere religious belief or categorically dismiss certain beliefs as being non-religious. *Keene I*, 2023 U.S. App. LEXIS 11807 at *5 [quoting *Thomas*, 450 U.S. at 714]. The OHSU Officials should have done likewise. Instead, they deliberately – in writing – identified which beliefs they deemed unworthy of accommodation. 2-ER-126-27, 139; 3-ER-549, 551-52. The OHSU Officials' targeting of religious beliefs is as unconstitutional in the face of a pandemic as it would be in any other context. *Lukumi*, 508 U.S. at 533.

■ *Lukumi* and *Masterpiece Cakeshop* both address the Free Exercise Clause's outright prohibition of government hostility toward religion. Opening Br.

at 24-27. While, as Defendants correctly point out [Answering Br. at 24], *Lukumi* involved a very unique factual scenario – namely, an ordinance targeting ritual animal sacrifices – the Supreme Court has found principles articulated in *Lukumi* applicable in a variety of factual contexts, including the COVID-19 pandemic. *See Diocese of Brooklyn*, 592 U.S. at 17-18 [quoting *Lukumi*, 508 U.S. at 533, 546].

This Court has likewise found both *Lukumi* and *Masterpiece Cakeshop* instructive in COVID vaccine mandate cases. *See*, e.g., *Bacon v. Woodward*, 104 F.4th 744, 750-51 (9th Cir. 2024) [citing *Lukumi*] and *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 fn. 3 (9th Cir. 2021) [citing *Masterpiece Cakeshop*, 584 U.S. at 638]. So, for that matter, has the Tenth Circuit. *See Univ. of. Colo.*, 100 F.4th at 1268-70, 1275-77, and 1280-81 [relying heavily on both *Lukumi* and *Masterpiece Cakeshop* in declaring a COVID vaccination policy substantially similar to OHSU's unconstitutional]. If the free exercise principles the Supreme Court articulated in *Lukumi* are applicable in factually distinguishable cases such as *Masterpiece Cakeshop* and *Diocese of Brooklyn*, it stands to reason that said principles are just as applicable here, and a reasonable person in the OHSU Officials' stead should have known that.

■ The Supreme Court has consistently recognized that opposition to abortion and concerns about complicity in a procedure religious adherents consider murderous can be, and typically are, rooted in religion. *See* Opening Br. at 42-48.

The OHSU Officials thus overstepped their constitutional bounds in declaring MacDonald's beliefs to be mere "personal moral choices and/or conscientious objections rather than a tenet of a religious faith." 2-ER-126; 3-ER-551.

■ Lastly, *Diocese of Brooklyn* directly concerns religious freedom within the context of the COVID pandemic. Opening Br. at 37-42. In *Diocese of Brooklyn*, which was decided less than a year before the events giving rise to this case, the Supreme Court reminded government officials across America that "[e]ven in a pandemic, the Constitution cannot be put away and forgotten." *Diocese of Brooklyn*, 592 U.S. at 19. This Court has wisely found *Diocese of Brooklyn* as applicable in cases involving individual government employees as it is to cases involving houses of worship. *See Keene I*, 2023 U.S. App. LEXIS 11807 at *7.

Concerning such cases as *Keene I, Keene II* and *Univ. of Colo.*, Defendants argue that "'judicial decisions that did not yet exist' at the time of the challenged action are 'of no use in the clearly established inquiry.'" Answering Br. at 28 (cleaned up) [quoting *Kisela v. Hughes*, 584 U.S. 100, 107 (2018)]. On the contrary, such cases are quite useful here, especially given that they do not break new ground: In *Keene I*, for instance, this Court faithfully applied principles articulated in both *Thomas* and Masterpiece *Cakeshop*, discussed *supra*, to the new factual permutation presented by the COVID-19 pandemic. *Keene I*, 2023 U.S. App. LEXIS 11807 at *5. The *Keene* decisions and *Univ. of Colo.* only give

credence to MacDonald's assertion that a reasonable person in the OHSU Officials' stead would have recognized the contours of MacDonald's right to abstain from receiving a COVID-19 vaccine based on the vaccines' connection to abortion without being fired for it. Given this Court's recognition that the contours of the right at issue existed at the outset of this case, it follows that a reasonable person in the OHSU Officials' stead should have reached the same recognition. *Dodge*, 56 F.4th at 776. MacDonald has thus met her burden on that point.

Defendants further attempt to absolve the OHSU Officials of liability for trampling on MacDonald's First Amendment-protected religious rights by arguing that "as OHSU discussed in its motion to dismiss, MacDonald's request … bore multiple indicia of insincerity that justified the denial of her request." Answering Br. at 42 [citing 3-ER-511-13]. Forget that "an assertion of sincere religious belief ***is generally accepted***." *Keene I*, 2023 U.S. App. LEXIS 11807 at *5 (emphasis added) [citing *Thomas*, 450 U.S. at 714]. As MacDonald pointed out to the District Court, Defendants sought to penalize MacDonald not only for failing to articulate her beliefs in a manner Defendants considered satisfactory, but also for not providing what Defendants deemed the right examples to illustrate her sincerity of belief. 3-ER-468-69. The Supreme Court has admonished government officials against "dissect[ing] religious beliefs because … [those] beliefs are not articulated with the clarity and precision that a more sophisticated person might employ."

*Thomas*, 450 U.S. at 715. The Committee acted *ultra vires* to the Free Exercise Clause in doing so here.

Defendants correctly point out that many of the bedrock constitutional principles MacDonald has presented here arose in contexts other than pandemics, as the District Court also recognized. *See* Answering Br. at 26 [citing 1-ER-50]. However, that does not mean those principles are not applicable here: Defendants' assertions to the contrary notwithstanding [Answering Br. at 21-29], the principles MacDonald has presented are broad enough to apply in a variety of contexts, including employment law cases involving healthcare workers and pandemics. A reasonable person in the OHSU Officials' stead should have known this. Accordingly, this Court should reverse the District Court's decision dismissing MacDonald's § 1983 claim against the OHSU Officials.

## II. MacDonald Raised a Triable Issue of Material Fact Concerning the Credibility of OHSU's Undue Hardship Assertion for Purposes of her Title VII Failure-to-Accommodate Claim.

A party is only entitled to summary judgment if the party proves "[t]here is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). This Court has strongly cautioned district courts against granting summary judgment in Title VII cases because the "ultimate question" in such cases – i.e., whether an employer unlawfully discriminated against an employee – "***can only be resolved through a searching inquiry*** – one that is most appropriately conducted by a factfinder, ***upon***

***a full record***." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (emphasis added) [quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000)]. Indeed, "[c]credibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts are responsibilities of a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In ruling on motions for summary judgment, "[i]t is ***not the province of a court to spin such evidence in an employer's favor*** when evaluating [the employer's] motion for summary judgment. To the contrary, ***all inferences must be drawn in favor of the non-moving party***." *Chuang*, 225 F.3d at 1129 (emphasis added). If a reasonable juror could find a defendant employer's evidence lacking in credibility, summary judgment is inappropriate. *Anderson*, 477 U.S. at 253-54. It is precisely for this reason that this Court has "emphasized the importance of zealously guarding an employee's right to a full trial" in Title VII cases, "since discrimination cases are difficult to prove" unless a jury gets the opportunity to "evaluate the credibility of the witnesses." *Davis*, 520 F.3d at 1089.

In this case, OHSU argues that MacDonald "failed to raise a triable issue of fact as to her failure-to-accommodate claim." Answering Br. at 30. Not only is this assertion meritless, as illustrated below, the District Court erroneously spun MacDonald's evidence in opposition to OHSU's undue hardship defense in the University's favor. Accordingly, this Court should reverse.

### A. Evidence of Discriminatory Motives is Relevant to the Undue Hardship Analysis, as it Goes to the Employer's Credibility.

The Supreme Court recognizes just two causes of action under Title VII: Disparate treatment (aka "intentional discrimination") and disparate impact. *Abercrombie & Fitch*, 575 U.S. at 773. A failure-to-accommodate claim is a type of disparate treatment claim. *Id.*

Much like Title VII claims of the variety that this Court has called "disparate treatment" or "religious discrimination" – the elements for which are different than a failure-to-accommodate claim [*see*, e.g., *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743-44 (9th Cir. 2004)] – an employer's discriminatory motives matter for purposes of a failure-to-accommodate claim: "[A]n individual's actual religious practice may not matter ***may <u>not</u> be a motivating factor*** in failing to hire, refusing to hire, ***and so on***." *Abercrombie & Fitch*, 575 U.S. at 773 (emphasis added)]. The words "and so on" mean failure-to-accommodate claims are no exception. *Id.* In other words, even granting that religious animus is not among the elements plaintiffs must prove to prevail on failure-to-accommodate claims, the real reason why a defendant employer denies an employee's religious accommodation request is material to evaluating an employer's undue hardship defense – and it is a jury's task to determine whether the employer's undue hardship determination is believable. *Anderson*, 477 U.S. at 255. This is especially true given the Supreme Court's admonition that "a hardship that is attributable to … the very notion of

accommodating [a given] religious practice ***cannot be considered 'undue.'***" *Groff*, 600 U.S. at 472 (emphasis added).

In this case, OHSU argues that MacDonald "seeks to import a pretext or discriminatory-motive element into the failure-to-accommodate analysis." Answering Br. at 30.[5] MacDonald does not seek to "import" anything: On the contrary, the issue of whether an employer acted with discriminatory motives is already a vital part of the failure-to-accommodate analysis, even if it is not an element a plaintiff must prove. *Abercrombie & Fitch*, 575 U.S. at 773; *see also Groff*, 600 U.S. at 472 ["If bias or hostility to a religious practice or to a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself"], *Keene II*, 2025 U.S. App. LEXIS 2105 at **7-8 [noting that the public policy underlying Title VII and analogous state laws is to deter religious discrimination], and *Univ. of Colo.*, 100 F.4th at 1275 [declaring it "necessary to probe the sincerity" of a government employer's justifications for a given policy "to evaluate whether they were but pretexts for discriminating against religion" (internal quotation marks omitted)].

---

[5] OHSU also asserts that MacDonald's argument concerning discriminatory motives is a "new position." Answering Br. at 30. It is not: MacDonald raised this issue in both her opposition to OHSU's motion for summary judgment and a notice of new authorities filed in opposition to said motion. 2-ER-60-61, 169-72.

OHSU argues that "no court has held that an employer's intent is relevant to whether the employer comported with its legal obligation to reasonably accommodate an employee under Title VII." Answering Br. at 30. OHSU is incorrect – the Supreme Court has weighed in on that very issue:

> "The term 'because of' … in [42 U.S.C.] § 2000e-2(a)(1) links the forbidden consideration to each of the verbs preceding it[.] … ¶ An employer who has actual knowledge of [an employee's] need for an accommodation does not violate Title VII by refusing to [accommodate] an applicant if avoiding that accommodation is not [the employer's] ***motive***. Conversely, an employer who acts with the motive of avoiding accommodation may violate Title VII even if [the employer] has no more than an unsubstantiated suspicion that an accommodation would be needed."

*Abercrombie & Fitch*, 575 U.S. at 773 (emphasis in the original) [citing 42 U.S.C. § 2000e-2(m)].

This Court's recent decision in *Keene II* is especially instructive on the issue of discriminatory motives in Title VII failure-to-accommodate cases: Like this case, *Keene II* involved a government employer that, like OHSU, deemed employees' abortion-based religious opposition to receiving a COVID vaccines "insufficient to warrant any accommodation[.]" *Keene II*, 2025 U.S. App. LEXIS 2105 at *7; *see also Keene I*, 2023 U.S. App. LEXIS 11807 at *4 [concerning the beliefs that gave rise to the *Keene* decisions]. While *Keene II* discusses the issue of a government employer's animus toward particular religious beliefs within the context of a motion for a preliminary injunction, not a Title VII failure-to-

accommodate claim, *Keene II* also makes clear that deciding whose beliefs are worthy of accommodation "can only be described as a 'dignitary affront'" that, "[i]n the analogous First Amendment context," would constitute irreparable harm – i.e., the type of harm for which mere monetary damages cannot truly compensate. *Keene II*, 2025 U.S. App. LEXIS 2105 at **6-7 [quoting *Diocese of Brooklyn*, 592 U.S. at 19, and *Burlington Northern*, 902 F.3d at 929]. OHSU has committed such a dignitary affront to MacDonald here.

OHSU accuses MacDonald of "attempt[ing] to bolster her argument by distorting language in *Groff*" – specifically, the Supreme Court's statement that "hardship stemming from 'animosity to a particular religion, religion in general, or to the very notion of accommodating a religious practice cannot be considered 'undue.'" Answering Br. at 38 [quoting *Groff*, 600 U.S. at 472]. MacDonald has done no such thing: Her opening brief acknowledges that the language from *Groff* that OHSU quotes "refers to other employees' hostility toward religion[.]" Opening Br. at 50. Her opening brief also points to other language in *Groff* supporting her assertion that the same language "applies with equal force to employers given Title VII's purpose of outlawing religious discrimination." *Id.*

Regardless, OHSU overlooks the public policy underlying Title VII's provisions proscribing religious discrimination – namely, protecting religious employees from their employers' animosity toward their beliefs. *Abercrombie &*

*Fitch*, 575 U.S. at 773-74. For this reason, the Supreme Court declared in *Groff* that if an employer could claim undue hardship based on animosity toward a given religious belief or practice, "Title VII would be at war with itself." *Groff*, 600 U.S. at 472. This is especially true in cases involving government employers, who are duty-bound to comply not only with Title VII, but also the First Amendment, which demands government neutrality toward religion. *Univ. of Colo.*, 100 F.4th at 1280. Given its exclusion of employees with beliefs like MacDonald's from consideration, OHSU's religious exception policy was by no means neutral. And as Oregon's since-repealed Vaccine Mandate indicates, the state did not see the onslaught of COVID-19 – not even the supposedly deadly Delta variant [*see* Answering Br. at 6, 8, 9, 24-25] – as so dangerous as to compel healthcare workers with religious objections to COVID vaccines to abandon their sincerely held beliefs. *See repealed* Or. Admin. R. 333-019-1010(3)(a), (5)(a).[6] OHSU did that entirely on its own and should be held accountable accordingly.

OHSU furthermore asserts that *Abercrombie & Fitch*, cited extensively *supra*, is a disparate treatment case. Answering Br. at 38. In a sense, OHSU is correct: As stated *supra*, the Supreme Court recognized in *Abercrombie & Fitch*,

[6] Oregon repealed Or. Admin. R. 333-019-1010 in its entirety on June 30, 2023. *See* https://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/9549761 (last visited August 26, 2024).

575 U.S. at 773, that a failure-to-accommodate claim is a type of disparate treatment claim. However, *Abercrombie & Fitch* is also a failure-to-accommodate case. *Id.* at 772 fn. 2. It is precisely because a failure-to-accommodate claim is a type of disparate treatment claim that an employee should get a chance to convince a jury that her former employer's assertion of undue hardship lacks credibility in light of the employer's discriminatory motives. *See Chuang*, 225 F.3d 1123-24.

A reasonable jury could decide that "a discriminatory reason more likely motivated" OHSU or that the University's "proffered explanation" – i.e., undue hardship – "is unworthy of credence." *Davis*, 520 F.3d at 1089 [quoting *Chuang*, 225 F.3d at 1123-24]. In fact, a district court answerable to the Ninth Circuit upheld a jury's ruling against post-trial motions in a COVID vaccine case precisely because it found a reasonable jury could find a government employer lacking in credibility on the issue of undue hardship. *Lewis-Williams v. Bay Area Rapid Transit Dist.*, 2024 U.S. Dist. LEXIS 234467 at *9 (N.D. Cal. Dec. 30, 2024). The District Court thus erred in declaring that "Defendant's allegedly discriminatory motives are not material to [MacDonald's] Title VII claim for failure to accommodate[.]" 1-ER-11.

### B. The District Court Erroneously Spun the Evidence in This Case in OHSU's Favor.

"[T]he requisite degree of proof necessary" for a plaintiff in a Title VII case to survive an employer's motion for summary judgment "***is <u>minimal</u>*** and does not

even need to rise to the level of a preponderance of the evidence." *Chuang*, 225 F.3d at 1124 (emphasis added). The evidence provided need only be "'specific' and 'substantial'" enough "to create a triable issue with respect to whether the employer intended to discriminate on the basis of" a characteristic protected under Title VII. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).

In this case, OHSU argues that MacDonald has failed to raise a genuine issue of triable fact concerning OHSU's intent. Answering Br. at 41-44. This assertion is meritless: MacDonald has provided extensive discussion of OHSU's institutional hostility toward employees with MacDonald's specific set of beliefs, both *supra* in the context of her § 1983 claim and in her opening brief. She need not reprise that analysis here.

The record contains two specific and substantial pieces of evidence that OHSU acted with discriminatory motives: OHSU's notice to employees as to what beliefs will not qualify for religious exceptions [2-ER-126-27 and 3-ER-551-52] and its e-mail to MacDonald denying her religious exception request [2-ER-139 and 3-ER-549]. Those two documents indicate in no uncertain terms that it was MacDonald's beliefs, not her position as a nurse in OHSU's Mother Baby Unit ("MBU"), that disqualified her from receiving a religious exception. Those two documents say nothing at all about any hardship, undue or otherwise – from either a financial or a human resources standpoint – OHSU would have to incur in order

to allow MacDonald to continue working in the MBU with a religious exception. The two documents thus give rise to a triable issue of material fact concerning OHSU's discriminatory intent for purposes of MacDonald's Title VII claim, rendering the University's assertion to the contrary meritless. Answering Br. at 41.

Only after MacDonald commenced this lawsuit did OHSU shift its focus from MacDonald's belief to MacDonald's specific position in the MBU. For this reason, in opposing OHSU's motion for summary judgment on her Title VII claim, MacDonald argued as follows:

> "For all the stats and studies OHSU cites … its proffered assertion that accommodating [MacDonald] would endanger the health and safety of employees, patients, and babies in the MBU is internally inconsistent or otherwise unbelievable. … The [District] Court may – and should – infer that it was not public health and safety that motivated OHSU, but animus toward its employees' religious convictions concerning abortion and those employees' desire not to be complicit in a practice they consider murderous."

2-ER-171.

The District Court had a duty to believe the evidence of the nonmovant – in this case, MacDonald – and draw all justifiable inferences in her favor. *Davis*, 520 F.3d at 1095 [quoting *Anderson*, 477 U.S. at 255]. The District Court did the opposite, giving considerable weight to the testimony of OHSU's expert witnesses and virtually none to MacDonald's evidence concerning animus. 1-ER-11-12, 16-26. While the testimony of OHSU's witnesses appears compelling, reasonable jurors could find OHSU's expert witnesses to be "bought and paid for," "parroting

the 'company line,'" and "not credible ***in light of their <u>bias</u>***, common sense, and other evidence[.]" *Lewis-Williams*, 2024 U.S. Dist. LEXIS 234467 at **7-8 (emphasis added). MacDonald argued this to the District Court, to no avail. 2-ER-172. The District Court should thus have allowed a jury to determine whether OHSU acted out of discriminatory motives, not out of a true desire to keep patients and employees safe. *Davis*, 520 F.3d at 1089. Indeed, it is the employee, not the employer, who is entitled to the benefit of any doubt. *Chuang*, 225 F.3d at 1129.

There is one other piece of evidence this Court should not ignore: OHSU's announcement of its support of abortion rights in the wake of the Supreme Court's decision overturning *Roe v. Wade*, 410 U.S. 113 (1973). 2-ER-151-53; 3-ER-536-38. A reasonable juror could find that given OHSU's institutional support of abortion rights, the University's concern about protecting "vulnerable populations" [Answering Br. at 24] – the babies in the MBU in particular – rings hollow and that OHSU is only pretending to care about saving babies to save its own hide.

"It is axiomatic that disputes about … credibility determinations ***<u>must</u> be resolved at trial, <u>not</u> on summary judgment.***" *Davis*, 520 F.3d at 1095, fn. 11 (cleaned up) (emphasis added). Because the District Court erroneously spun the evidence in OHSU's favor rather than letting a jury evaluate whether OHSU was motivated by animus toward its employees' anti-abortion religious beliefs, this Court should reverse.

## CONCLUSION

Defendants would have this Court believe the COVID-19 pandemic allowed them to be openly and brazenly hostile to the beliefs of OHSU employees who sought religious exemptions from Oregon's Vaccine Mandate due to COVID vaccines' connection to abortion so long as they could assert either qualified immunity (in the case of the OHSU Officials) or undue hardship (in the case of OHSU itself). The District Court erroneously accepted both arguments. As illustrated by the *Keene* cases, this Court has not and should not do so here.

Accordingly, this Court should reverse the District Court's dismissal of MacDonald's § 1983 claim against the OHSU Officials and its grant of summary judgment to OHSU on MacDonald's Title VII claim and thereby preserve this Circuit's longstanding policy of protecting government employees' religious freedoms.

Respectfully submitted,

Dated: May 19, 2025 By: */s/ RAY D. HACKE*

RAY D. HACKE
PACIFIC JUSTICE INSTITUTE
P.O. Box 5229
Salem, OR 97304
(503) 917-4409
rhacke@pji.org

MATTHEW B. MCREYNOLDS
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600

Sacramento, CA 95826
(916) 857-6900
mmcreynolds@pji.org

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, I electronically filed the foregoing Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

Dated: May 19, 2025

*/s/ RAY D. HACKE*
Ray D. Hacke
Attorney for Plaintiff-Appellant
BRITTANY MacDONALD

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-4852

I am the attorney or self-represented party.

**This brief contains** 6,286 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ______.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/RAY D. HACKE **Date** May 19, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*